(104 So. 671)

**McELDERRY v. ABERCROMBIE, Superintendent of Education, et al. (3 Div. 681.)**

(Supreme Court of Alabama. May 28, 1925.)

**1. Officers ⬠94—Laws, fixing salaries for public officers out of public funds, administrative rather than penal.**

Code 1923, § 7255, relates only to fees and costs taxed against parties to suit, and laws, fixing salaries and compensation for public officers out of public funds, cannot be classed as penal, but are rather administrative.

**2. Officers ⬠94—One accepting public office takes it cum onere, and can receive only salary authorized.**

He, who accepts public office, takes it cum onere, and can receive only such salary as is authorized by law.

**3. Constitutional law ⬠62—Legislature may delegate fixing of amount of salaries of public officers to administrative agency.**

Legislature may delegate fixing of amount of salaries of public officers to administrative agency, having special knowledge of nature and quantum of service.

**4. Schools and school districts ⬠47—Allowance to state superintendent of education in addition to salary held not invalid, in view of increased duties and subsequent approval thereof by Legislature.**

In view of reorganization of department of education by Acts 1919, p. 568, and further enlargement of duties of state superintendent of education by Acts 1920, p. 137, and in view of Acts 1923, p. 789, fixing his salary at $6,000 per annum, after expiration of ensuing term, *held* that allowance to superintendent by state board of education of $2,000 per annum, in addition to $4,000 he was then receiving, was not invalid.

**5. States ⬠68½—Averments, as to misuse of funds, held too general and indefinite.**

In taxpayer's bill for injunction against state superintendent of education, averments charging misuse of contingent fund in payment of "exorbitant expenses" and for purposes, other than discharge of official duty, are too general and indefinite.

**6. Injunction ⬠1—Operates prospectively only, and cannot redress past acts.**

An injunction operates prosectively only, and cannot redress past acts, and court cannot anticipate future violations of law, unless they are shown to be in contemplation.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Bill for injunction by G. T. McElderry against John W. Abercrombie, as Superintendent of Education, and W. B. Allgood, as State Auditor. From a decree sustaining demurrer to the bill, complainant appeals. Affirmed.

Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellant.

Provision for compensation of a public officer must be expressly made by statute. State ex rel. Pollard v. Brewer, 59 Ala. 130; Torbert v. Hale County, 131 Ala. 143, 30 So. 453. Statutes relating to fees of officers and costs are to be construed as penal. Ex parte Mobile Co., 200 Ala. 410, 76 So. 2. The compensation for respondent as a member of the state board of education is fixed by section 3 of the School Code. There is no authority in section 25 for the salary fixed by the board. The salary of respondent must be fixed by law. Const. 1901, §§ 118, 262; Commonwealth v. Addams, 95 Ky. 588, 26 S. W. 581. State ex rel. Crumpton v. Montgomery, 177 Ala. 212, 59 So. 294; State ex rel. Bond v. State Board, etc., 95 So. 295, 209 Ala. 9; Parke v. Bradley, 204 Ala. 455, 86 So. 28. If the state board had authority to fix the added salary, under section 25 of the School Code, it would be offensive to the Constitution. Const. 1901, §§ 68, 280, 281.

Hugh D. Merrill, of Anniston, and Steiner, Crum & Weil, of Montgomery, for appellees.

The state board had authority to compensate the superintendent for added duties. Tayloe v. Davis, 212 Ala. 282, 102 So. 433; Report of Atty. Gen., 1918-20, p. 481; State ex rel. Turner v. Henderson, 199 Ala. 344, 74 So. 344, L. R. A. 1917F, 770; State ex rel. Daly v. Henderson, 199 Ala. 428, 74 So. 951; Henry v. State ex rel. Welch, 200 Ala. 475, 76 So. 417; State ex rel. Clarke v. Carter, 174 Ala. 266, 56 So. 974; State v. Sanders, 187 Ala. 79, 65 So. 378, L. R. A. 1915A, 295. Administrative statutes are to be liberally construed. Harrington v. State ex rel. Van Hayes, 200 Ala. 480, 76 So. 422. Injunction will not issue upon mere apprehension that some illegal act will be done. O'Rear v. Sartain, 193 Ala. 275, 69 So. 554, Ann. Cas. 1918B, 593.

BOULDIN, J. This is a taxpayer's bill with the primary purpose of enjoining the state superintendent of education from drawing $2,000 per annum, as compensation for new and additional ex officio duties, required of him as executive officer of the state board

of education. The bill shows that, under order or resolution of the state board of education, the superintendent is receiving such compensation in addition to the salary of $4,-000 per annum attached to his office. The authority of the board of education to make the allowance is challenged. The appeal is from a decree sustaining demurrers to the bill.

[1] We are reminded in brief for appellant that the law of fees and costs of public officers is penal, and no fee must be received, except in cases expressly authorized by law. Code 1923, § 7255. This section relates to fees and costs taxed against the parties to suits. Strictly speaking, laws fixing salaries and compensation for public officers out of public funds cannot be classed as penal. They are rather administrative, designed to compensate for services performed pursuant to law, that the government may properly function.

[2, 3] It is true, however, that he, who accepts public office, takes it cum onere, and can receive only such salary or compensation as is authorized by law. Torbert v. Hale County, 131 Ala. 143, 30 So. 453; State ex rel. Pollard v. Brewer, 59 Ala. 130. Salaries are usually fixed by express enactment. But it is within the power of the Legislature to delegate to administrative agencies, state or divisional, having special knowledge of the nature and quantum of the service, the fixing of the amount of the salaries or compensation.

[4] It is not here questioned that a public officer may, when duly authorized by law, receive, beside the fixed salary of his office, compensation for services in performance of substantial new and additional duties attached to his office, without a violation of the constitutional provisions against dual office holding and increase of salary during his term. Tayloe v. Davis (Ala.) 102 So. 433.[1] The amended bill questions the application of that rule to the case in hand.

On September 26, 1919, was approved an act of the Legislature "to provide a complete educational system for the state of Alabama." Gen. Acts 1919, p. 568. A catalogue of the several subdivisions of this general subject is set out in the title of the act. This act, with other legislation, is embodied in the "School Code of Alabama 1924." In general it provides for "a general system of public schools" throughout the state, under the supervision of the "state superintendent of education with the advice and counsel of a state board of education." School Code, §§ 4, 5. The state board of education created by the act was composed of the governor, six members appointed by him, and the "state superintendent of education, who shall be chairman and executive officer of the board." Acts 1919, art. 3, § 1, p. 570. The members

are now increased to one from each congressional district. School Code, § 7.

In the reorganization of the entire department of education, the enlargement of its fields of activity, and creation of the state board of education, it cannot be well questioned that new and responsible duties were imposed upon its executive officer, ex officio duties of the superintendent of education. The duties were further enlarged by the act to promote "vocational rehabilitation" (Acts 1920, p. 137); and by an act providing for the physical examination of public school children, and for a system of physical education in the public schools. Acts 1920, p. 149. The General School Law of 1919 did not fix the salary of the state superintendent of education, but declared:

"He shall receive such salary as is fixed in accordance with law." Art. 4, § 2, p. 576.

This act did, however, provide for the expenses and per diem of members of the state board of education for a limited number of days in attending meetings and transacting the business of the board. Article 3, § 3, p. 571. This section does not deal with compensation for the services of the executive officer of the board, to be rendered at all times, and apart from the mere matter of attending meetings. Its relevancy to the issue here is whether the failure to make provision for compensation to the executive officer, as such, implies that no such additional compensation was intended. The salary of the state superintendent of education was dealt with in the general act to "fix the compensation of the several state executive officers," etc. Acts 1919, p. 1006. Therein the salary was fixed at $3,000 per annum during the ensuing term, and $4,000 thereafter. Page 1010.

Without more, it is not to be questioned that the added duties attached to his office, as executive officer of the board of education, would be covered by the salary.

Article 3, § 25, School Code (Acts 1919, p. 575) reads:

"The state board of education is specifically charged with the duty of equalizing public school facilities throughout the state, in so far as it may be practicable; and in order to make it possible to increase the length of school terms in rural districts, and to care for that and other worthy purposes for which no adequate appropriation has been made, including expenses and compensation of the members of the state board of education in the discharge of their official duties, the said state board of education is hereby empowered and directed to expend so much as it may deem proper of the amount set aside annually by legislative enactment as a revolving fund for the use of the state board of education, provided that at least eighty (80) per cent. of the amount appropriated, if used, shall be expended for lengthening public school terms and otherwise bettering conditions in rural schools, and provided further that any unexpended

[1] 212 Ala. 282.

balance at the end of any fiscal year shall be placed to the credit of the general educational fund."

By a separate act, an appropriation of $50,-000 for the year beginning October 1, 1919, $100,000 per annum thereafter, was made to the state board of education for the purposes named in section 25 above. Acts 1919, p. 1029. It appears that, under the real or supposed authority of these provisions, the state board of education made the allowance here complained of.

The several statutes, relating to the same subject-matter, pending at the same time before the Legislature, and approved within a week's time, are to be construed together. Section 25 above quoted is very general. The term "revolving fund," as therein used, implies the passing of the fund from one use to another in furtherance of the general purpose. Eighty per cent. must be expended in "lengthening public school terms and otherwise bettering conditions in rural schools." Even this is general in leaving to the board of education the determination of the objects to which the fund would be devoted in "bettering conditions," etc.

As to the 20 per cent. there appears no limitation on its use except "other worthy purposes for which no adequate appropriation has been made." It appears that, in view of the reorganization of the entire educational system, the expense as well as scope of official labor and responsibility, being yet somewhat undetermined and depending to a degree upon the future activities of the board itself, the purpose was to vest in the board of education, including the governor and members named by him, a broad discretion in furtherance of the general ends in view. The complaining party has the onus of showing the use of the fund was outside this discretion. Whether compensation for the added duty and responsibility found to rest upon the executive officer of the board is within the "other worthy purposes for which no *adequate appropriation* has been made" (italics supplied) is not free from doubt, especially as the executive officer is a member of the board and has one official salary. We are disposed to resolve this doubt in the light of subsequent legislative action.

On March 11, 1920, the Attorney General, as the law officer of the state, rendered his opinion to the state auditor approving the allowance here assailed. Report of Atty. Gen., 1918–1920, p. 481. This opinion was followed until the legislative session of 1923. In the act to "fix salaries and compensation of certain state officials," etc., approved September 29, 1923 (Acts 1923, p. 789), the salary of the superintendent of education is fixed at $6,000, to become effective after the expiration of the ensuing term as per the Constitution. By section 27, p. 794, it is provided that the salaries so fixed shall be "in full for all duties and services now required, or which may hereafter be required of such officers."

Section 28, p. 794, provides:

"That after the salary or compensation fixed by this act becomes effective, it shall be unlawful for any officer, appointee or employee whose salary is fixed by this act to accept any increase above the maximum herein fixed in salary or any further compensation for additional duties placed upon him as for additional services performed in the scope of his duties as such officer," etc.

A violation of this provision is made a misdemeanor, and subjects the officer to impeachment.

By act approved the same day it is provided:

"Section 1. That there is hereby appropriated annually to the state board of education the sum of seventeen thousand five hundred dollars ($17,500), or so much thereof as may be necessary for *executive*, supervisory and clerical purposes in the administration of the state department of education, including the expenses and compensation of the members of the state board of education in the discharge of their official duties." (Italics supplied.) Acts 1923, p. 690.

It is clear the Legislature was dealing with a known situation, shown by the reports of the Attorney General, and of the state auditor. Section 28 shows a sharp disapproval of the policy of allowing extra compensation for additional duties imposed during the term of office. It is significant that in dealing with the whole subject the salary of the superintendent of education was placed at the same sum he was then receiving in the aggregate as salary and compensation for services as executive officer of the board of education; that the operation of the provision against such extra allowance was postponed until the new salary becomes effective; and that a special appropriation was made, broad enough in terms to cover such *executive* expenses. We view this as a legislative approval of the construction then being given the law, and an approval of the compensation being paid to the superintendent of education.

[5] The averments of the bill, charging the misuse of the contingent fund in payment of "exorbitant expenses," and for purposes other than the discharge of official duty, are too general and indefinite to properly advise the respondent what he is called upon to defend.

[6] An injunction operates prospectively only, and cannot redress past acts. The court cannot anticipate future violations of law, unless they are shown to be in contemplation. Moreover, the law provides methods of checking and supervising the expense accounts of public officials. A court of equity could not well assume such burden, and, if it would intervene in any event, it would be

only on a very clear showing of the necessity for its injunctive relief.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.

