189 So. 86

### SMITH v. STATE.
### 2 Div. 652.

Court of Appeals of Alabama.

May 9, 1939.

Christopher & Lindsey and J. Joseph Thompson, all of Butler, for appellant.

Thos. S. Lawson, Atty. Gen., and Wm. H. Loeb, Asst. Atty. Gen., for the State.

**BRICKEN, Presiding Judge.**

The evidence in this case, without dispute, discloses that Doc Ezell, the deceased named in the indictment, was shot and killed on the night of April 14, 1937, and that said shooting occurred at or near a place owned and run by one Jeff Crowell, colored, and that on the occasion in question a large crowd of negroes were assembled at a fish supper, and for other amusements.

At the Fall Term 1937 of the circuit court of Choctaw County, the Grand Jury returned an indictment in which it was charged that the three named defendants, towit: Henry Smith, John Hynde, alias Hines, and Will Pennington killed the deceased by shooting him with a pistol, and that said killing was perpetrated under such facts and circumstances as to constitute murder in the first degree. No objection by demurrer or otherwise, was interposed to the indictment. Before arraignment and entering upon the trial, each of the three defendants separately demanded a severance which demand, as the law requires, was granted, and this appellant, Henry Smith, was put to trial. He interposed a plea of not guilty. The trial resulted in his conviction of manslaughter in the first degree, and the jury fixed his punishment at imprisonment in the penitentiary for a term of eight years. The trial court received the verdict, and properly adjudged the defendant guilty of the offense of manslaughter in the first degree, in accordance with the verdict of the jury. But in undertaking to sentence the prisoner, for the stated term of imprisonment, the court failed to propound to him the question if he had anything to say why sentence should not be pronounced upon him. To this extent, the judgment is erroneous. However, if no reversible error appears, such error would not affect the judgment of conviction. The cause would be remanded to the lower court for proper sentence. Bryant v. State, 13 Ala.App. 206, 211, 68 So. 704; Frazier v. State, 17 Ala. App. 486, 86 So. 173; Coleman v. State, 20 Ala.App. 120, 101 So. 81; McMahan v. State, 21 Ala.App. 522, 109 So. 553; Oliver v. State, 25 Ala.App. 34, 140 So. 180.

In all criminal cases a defendant may appeal to the appellate court from the judgment of conviction in the lower court. That right is absolute, by provision of the Statutes, and such appeal may obtain without bond or security. Appellants in crim-

inal cases are not required to assign errors, to argue the case, or to file brief, on appeal to this court. The law makes the appellate courts, as it were, their guardian; and requires us to search the record for errors, and, if any we find, to reverse the judgment of conviction from which the appeal was taken, unless it affirmatively appears that no injury to the appellant resulted from such error.

The undisputed evidence disclosed that the deceased, Doc Ezell, a white man, while sitting in his car with a Mr. and Mrs. Skelton and their infant child, was assassinated by having been shot by someone who fired three pistol shots from the dark between two houses. One of the houses was the home and place of business of one Jeff Crowell, the principal witness for the State. The killing occurred between 9 and 10 o'-clock at night. There were a large crowd of negroes present; the occasion being a fish fry, dance and other amusements in witness Crowell's place of business; some of the witnesses estimated the crowd would number between fifty and seventy-five, all negroes.

The controlling question in this case is the identity of the person who fired the shot that killed deceased.

This appellant strenuously denied that he fired the shot, and that he knew anything about it, and took no part in the shooting, and no witness on the trial below testified that he did. The most damaging testimony against him was the testimony of said witness Crowell who was himself arrested and placed in jail charged with this same murder, as shown by his own testimony.

We have given careful and attentive consideration to the evidence adduced upon the trial of the case in the court below. The State's evidence is replete with material contradictions, conflicts, uncertainties, and very vague. The principal State's witness, Jeff Crowell, while testifying admitted that upon several occasions he had made statements which were inconsistent and contradictory to his testimony in this case; and, in concluding his testimony on cross examination admitted that the incriminating facts testified to by him, as against this appellant was based entirely and solely upon what had been told to him by some one else several days after the commission of the offense complained of. In this connection the record shows:

"Attorney for defendant asked the following questions:

"Q. When was the first time you told anybody about Henry Smith being connected with it? A. I think that was in the first preliminary trial here.

"Q. When was the first time you knew Henry Smith was in it? A. In the preliminary trial.

"Q. You didn't know it before that day? A. I knew that he was accused of it when it was brought here. * * * I did testify in the case of the State vs. John Hines, charged with killing Mr. Ezell, in this courthouse, that the reason I didn't tell Mr. Stanford and them that Henry Smith shot was because I didn't know it until after I was put in jail, and when you asked me how I found out, I said *that Will Pennington told me.* It was the truth, I didn't know Henry was the man shot him until Will Pennington testified he shot him. I am basing it on what Will Pennington told me in the Choctaw County jail and what I saw that night. I told Will Pennington that I didn't know Henry Smith was accused of shooting him."

After it had been developed that witness Crowell's testimony, which tended to connect this appellant with participating in the commission of the offense, was based, by his own admission, upon hearsay, pure and simple, no motion was made to exclude that portion of the testimony. Therefore the entire testimony of witness Crowell was permitted to remain with the jury. The probative force and credence of this testimony was for the jury to determine. If this portion of said witness' testimony had been excluded, as it should have been, we are inclined to the opinion that the court upon proper request would have been justified in directing a verdict in defendant's favor. Certainly, from what has been hereinabove stated, and for other reasons, the court should have instructed the jury, "that if there is, from the evidence a reasonable probability of the defendant's innocence, the jury should acquit the defendant." This charge was *predicated upon the evidence* and based upon a *reasonable* probability of the defendant's innocence. It was in no sense abstract, and should have been given. The court erred in refusing to do so. Sims v. State, 100 Ala. 23, 14 So. 560; Mims v. State, 141 Ala. 93, 37 So. 354; Cory v. State, 22 Ala.App. 341, 115 So. 700; Buf-

ford v. State, 23 Ala.App. 521, 128 So. 126; Miller v. State, 24 Ala.App. 552, 137 So. 781; Huguley v. State, 4 Ala.App. 29, 58 So. 814, and cases cited. Gainey v. State, 141 Ala. 72; 37 So. 355; Miller v. State, 24 Ala.App. 552, 137 So. 781.

 On the trial below the defendant's case was burdened with damaging testimony as to facts and circumstances alleged to have happened an hour or two after the time of the commission of the offense. Such evidence had no place upon the trial of this case, but so far as the record shows this testimony was not objected to by defendant and no ruling of the trial court invoked in connection therewith. The evidence referred to related to facts and circumstances totally foreign to any issue involved upon the trial. It was no part of the res gestæ, and was calculated to greatly prejudice the substantial rights of the defendant. The trial court may not be put to error in this connection. for, as stated, no ruling of the court was invoked. All such matters could have been presented to the trial court, and considered by it, if these questions had been properly presented to the lower court upon motion for a new trial, and the ruling or action upon the motion, could have been considered and review had by this court on appeal. The action of the court on motion for a new trial is not presented for our consideration as the *bill of exceptions* fails to show that an exception was reserved to this ruling.

There may be some force in the argument, in brief, by counsel for appellant, wherein it is stated:

"It is conclusively shown that the Jury was determined to convict someone for this murder and the degree of punishment meted out by them conclusively shows that they were not convinced beyond a reasonable doubt that the Defendant, Henry Smith, did the shooting. The State had Henry Smith's pistol sent to a Criminologist for a ballistic test and his testimony was that the bullet which was sent to him, and which the State admitted was taken from the body of the deceased, was not fired from the Defendant's pistol.

"We submit further that the said verdict of the Jury is unfair and without reason and that any of the negroes around this negro restaurant and dance hall could have fired the fatal shot, if it was fired there."

However, if this court were convinced of the verity of all of the foregoing, yet it is not within our province to grant the relief sought on these grounds. To do so would be an assumption by this court of the pardoning powers. Such power rests with his excellency, the Governor, and to him and his advisory pardoning board matters of this nature must be presented if so desired by the interested parties. Harper v. State, 18 Ala.App. 584, 93 So. 273; Shaw v. State, 21 Ala.App. 387, 110 So. 168; certiorari denied, 215 Ala. 239, 110 So. 169.

 Under the undisputed facts in this case as to the killing of the deceased, a verdict of manslaughter in the first degree, was not an intelligent verdict, and was not responsive to any evidence adduced upon the trial. It was, of course, under the law, within the province of the jury to determine the grade of homicide by its verdict, but there should be some evidence upon which the jury could properly predicate its verdict. Here, as stated, a white citizen, sitting in his car with a friend and wife with a small infant, was assassinated by having been shot by some one in the dark. No indication of a difficulty of any sort, no evidence to sustain the insistence that the killing was done as a result of heat or passion or under circumstances which under the law would constitute manslaughter. This fact is mentioned as indicating there may be some force in the above quoted insistence of counsel for appellant. The humane provision of the fundamental law, to the effect that no person accused of crime shall be deprived of life, liberty or property, except by due process of law, applies in this, as in all criminal prosecutions, and we are of the opinion it would be unconscionable to permit a conviction to stand under all the facts and circumstances of this case hereinabove detailed.

The judgment of conviction from which this appeal was taken is reversed and the cause remanded.

Reversed and remanded.