4 So.2d 5

**STATE v. VAUGHAN.**

**4 Div. 608.**

Court of Appeals of Alabama.
March 4, 1941.

Rehearing Denied May 13, 1941.

Further Rehearing Denied June 10, 1941.

Thos. S. Lawson, Atty. Gen., and Noble J. Russell, Asst. Atty. Gen., for the State.

202

Mulkey & Mulkey, of Geneva, for appellee.

BRICKEN, Presiding Judge.

The appellee, (defendant) was arrested on a warrant charging him with a violation of the Game and Fishing Laws.

The amended affidavit on which he was put to trial charges: "On or about February 16, 1940, John Vaughan did sell, offer for sale, or have in his possession for sale, in Geneva County, Alabama, fresh water Bream or Crappie, which are game fish, against the Regulation, duly made and promulgated, by the Department of Conservation, and approved by the Director of Conservation, which said Regulation became effective September 16, 1939."

The case appears to have been tried on an agreed statement of facts. The record recites there was no proof that the defendant sold or offered any fresh water bream or crappie for sale. On the date named in the affidavit the defendant had in his possession 250 pounds of bream in a barrel, which barrel was unopened and from which no fish had been delivered, the barrel was being opened for the purpose of placing ice on the fish. He had these fish in his possession in Geneva, Alabama. The defendant obtained these fish near the Town of Kissimmee, Florida. The fish were lawfully obtained at said place. The defendant paid cash for the fish, and received a receipt showing the payment, which was introduced in evidence. The fish were consigned to a party at Westville, Florida. These fish were brought from the point of purchase through Georgia and Alabama and were due to be delivered at Westville, Florida, but, for the purpose of this case, the record recites, "it is agreed and understood that he did offer to sell, or did sell such fish in the State of Alabama, and in Geneva County."

The recital in the record is somewhat inconsistent with the previous recital that there was no proof that the defendant sold, or offered any fresh water bream or crappie for sale.

By an Act, approved March 18, 1933, Acts Extra Session 1933, page 67, Code 1940, Tit. 8, §§ 59–63, 65–68, 80; Tit. 17, § 27, entitled, "An Act To define the status of fish life in the public fresh waters of Alabama," bream and crappie are considered game fish. This Act also provides that the title ownership of all the fish in the public fresh waters in the State of Alabama are vested in the State for the purpose of regulating the use and disposition of the same in accordance with the provisions of the laws of this State and regulations based thereon.

A Department of Conservation of game, fish and sea foods was created by an Act approved August 12, 1935, Acts 1935, page 632, Code 1940, Tit. 8, §§ 17–19, 21–37, 39–58.

In Section 23 of this Act, Code 1940, Tit. 8, § 21, it is provided: "The Commissioner, with the approval of the Conservation Board, is hereby authorized to make and promulgate such reasonable rules and regulations, not in conflict with the provisions of the game and fish laws, as he may deem for the best interest of the conservation, protection and propagation of wild game, birds, animals, fish and seafoods, which rules and regulations shall have the force and effect of law; provided, however, that the Commissioner shall not have the right to make or promulgate any rule or regulation which will hamper industry, or which will interfere with the operation of any industrial plant or plants, or industrial operation, or operations."

Acting under the supposed authority of this statute, it seems that Rule 7 was promulgated by the Commissioner, and we assume with the approval of the Conservation Board, although there is nothing in the record affirmatively showing that fact. Rule 7, as set out in the record, is in the following language: "7.' The sale, offer or possession for sale of any game fish

in the State of Alabama, regardless of where taken is hereby prohibited."

The record informs us that the presiding judge held Rule 7 unconstitutional and discharged the defendant. The State insists that Rule 7 is valid, and seeks a reversal of the judgment rendered in the court below. The appellee insists that the Conservation Board did not have the legal authority to pass or adopt Rule 7. It is also contended that the rule is unreasonable; that it tends to affect industry; that no punishment is prescribed for violation of the rule, and that the rule is not a proper exercise of the State's police power.

We do not find it necessary to discuss the several propositions urged by the appellee, nor do we find it necessary to undertake to define the limit of the State's authority regulating the possession or sale of game fish.

■ For the purpose in hand it is sufficient to say that it is our opinion that if the State can prohibit the sale, offer or possession for sale of game fish in Alabama, it must do so by law and not by a regulation of the Conservation Commissioner approved by the Conservation Board.

Section 44 of the Constitution of Alabama declares: "The legislative power of this state shall be vested in a legislature, which shall consist of a senate and a house of representatives."

The Legislature apparently recognizes that the sale or possession of fish must be prohibited by the Legislature itself and not left to the head of a department or State board.

In Section 7 of the Act "To define the status of fish life," it is provided: "It shall be unlawful for any person, firm or corporation to sell or offer for sale within or ship or transport for sale within or without this State any game fish named in this Act, caught or taken from the public waters of this State. Provided that nothing in this Act shall prohibit the sale within the State of fish taken from private waters by the owners thereof or members of his family."

We pretermit any discussion of any question of discrimination which might result from prohibiting the sale of game fish lawfully taken without the State, and at the same time allowing the sale within the State of fish taken from private waters by the owners thereof. We call attention to the statute for the purpose of showing that when the sale or shipment of game fish within the State was prohibited it was by the Legislature and not by a regulation of the Conservation Commissioner.

■ Again by an Act approved September 14, 1935, found at page 1110 of the 1935 Acts, Code 1940, Tit. 8, § 63, the sale of bass, commonly called trout, or green trout regardless of where taken, is prohibited within the State of Alabama.

If the Legislature intended for the sale or possession for sale of bream and crappie taken without the State should be prohibited in this State, we are unable to understand why it limited its prohibition to the sale of bass (regardless of where taken) instead of making its prohibition cover all game fish when it had the subject before it in 1935.

■ It is our understanding that the law making power, invested exclusively in the Legislature, cannot be delegated to any other department of the government, or to any other agency, either public or private.

In Parke et al. v. Bradley, 204 Ala. 455, 86 So. 28, 32, it was said: "The limits beyond which a Legislature thus constituted may not go in the delegation of those portions of its sovereign power which are not strictly legislative in character have never been clearly and certainly defined. A study of the laws and decisions of this and other states will show that there has always been a twilight zone within which the legislative practice has vacillated and judicial opinion has varied, with respect to the exercise of that prerogative. The tendency of the courts, as the guardians and expounders of Constitutions, has been and is to accord to legislative action of this character the utmost liberality that is possible, consistently with the preservation of the organic structure of their governments."

■ While it is true that in Section 23, above referred to, it is provided, that the "rules and regulations" promulgated by the Commissioner of Conservation, with the approval of the Conservation Board "shall have the force and effect of law," the language quoted applies only to rules or regulations, and not to an effort to usurp the power of the Legislature. Official action cannot be made a rule or regulation merely by calling it a rule or regulation.

■ In our opinion, Rule 7, above referred to, is not a rule or regulation. The

result it seeks to accomplish can only be accomplished by an act of the Legislature. Our form of government will not admit of a head, of a department prohibiting the sale or possession of game fish, taken without the State. The Legislature, under our form of government is the only body that can exercise the police power of the State to that extent.

We are of the opinion that the case was correctly decided in the court below, and its judgment will stand affirmed.

Affirmed.

### On Rehearing.

The difference between the power to pass a law and the power to adopt rules and regulations to carry into effect a law already passed by the legislature is obvious. We regard, as the legislature itself has regarded, the prohibition of the sale of fish, foreign or domestic, a subject of law and not a subject of a regulation to carry some previously enacted law into effect. There is no absolute, universal formula for determining in all cases the powers which must be exercised by the legislative body itself and those which may be delegated by the legislature to some administrative agency. It is, however, significant, we think, that the legislature itself prohibited the sale of bass taken without the State. This was not left by the legislature to rules or regulations promulgated by an administrative agency. The legislative prohibition was limited to bass and does not apply to bream and crappie. Acts 1935, page 1110, Code 1940, Tit. 8, § 63. This seems to indicate two things, namely: (1) A legislative recognition that legislation is necessary to prohibit the sale of fish. (2) A legislative intent not to prohibit the sale of bream and crappie in waters without the State and a like intent not to authorize that to be done by an administrative agency.

In the statute cited, the legislature was dealing with fish. We are reluctant to believe that the legislature would have prohibited the sale of bass and not prohibit the sale of bream and crappie when the subject of fish was being dealt with, had the legislature intended for the sale of bream and crappie taken in waters without the State to be prohibited.

We have not overlooked Skrmetta v. Alabama Oyster Commission, 232 Ala. 371, 168 So. 168, emphasized by the Attorney General in brief on rehearing. We did not comment on that because the distinction between that case and the case at bar is obvious. In the Skrmetta case, the court was concerned with the act of a public corporation created by statute, in regulating the manner of taking public property, the State's absolute property in and to the oysters and oyster beds being established, if not conceded, for private use.

In the case at bar the fish involved were Vaughan's (appellee) property. The State of Alabama never acquired any property in them. The fish were lawfully acquired in Florida and lawfully brought into Alabama. They were legitimate articles of interstate commerce and private property. This case involved no attempt to regulate the method of taking the State's property from the State's holdings as was the case in Skrmetta case.

There being no absolute and universal formula for determining in all cases the power which must be exercised by the legislative body itself, each case must be controlled by the application of the general principle to a given situation.

We are of the opinion that Schechter Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947, and Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446, when read understandingly in connection with the Skrmetta case, supra, forces us to the conclusion that the judgment appealed from should be affirmed, "to the end that it may be a government of laws and not of men." Alabama Constitution 1901, Section 43.

Opinion corrected, and extended. The application for rehearing is overruled.