317 So.2d 348

**Wayne CASSELL, alias**

**v.**

**STATE.**

**8 Div. 631.**

Court of Criminal Appeals of Alabama.

July 29, 1975.

James L. Hunt, Tuscumbia, for appellant.

William J. Baxley, Atty. Gen., and William A. Golinsky, Asst. Atty. Gen., for the State, appellee.

TYSON, Judge.

The indictment in this cause (omitting formal parts) is as follows:

"Circuit Court, February Term, 1974

"The Grand Jury of said County charge that before the finding of this Indictment, Wayne Cassell, alias, Buford Wayne Cassell, whose name is otherwise unknown to the Grand Jury that as stated, did, on to-wit: November 10, 1973, illegally possess seventeen (17) tablets containing Methaqualone, contrary to the provisions of the Alabama Controlled Substances Act, the same being Act No. 1407 of the Regular Session of the Alabama Legislature, 1971, said possession of said Methaqualone being subsequent to September 16, 1971, the effective date of said Act, and subsequent to September 13, 1973, the date Methaqualone was put under control by the Board of Health of the State of Alabama, as authorized by Title 22, Section 258, 26-38, Code of Alabama, 1940, as last amended, against the peace and dignity of the State of Alabama."

To this indictment, the appellant filed both a motion to quash and a demurrer, each in substance raising the constitutionality of the regulation of the State Board of Health adopted at a meeting on September 19, 1973, and published on September 30, 1973, by the Board of Health in the Birmingham News and Post-Herald, which placed the drug "Methaqualone" on the controlled substances list pursuant to the provisions of Title 22, Sections 258(26), 258(30), and 258(38), Code of Alabama 1940, as amended 1971. This motion and demurrer were overruled at trial.

The appellant filed a motion to suppress, which was also overruled, and following a trial by jury, on August 16, 1974, the appellant was found guilty, as charged, and the discretion to impose a fine was left to the trial court, by the verdict. On October 17, 1974, the appellant's request for probation was denied, and the appellant was sentenced to two years imprisonment. Thereafter, the appellant filed a motion for new trial, which was duly heard and overruled.

Just prior to trial, the District Attorney, Mr. McCutchen, presented a duly certified copy of the regulation of the State Board of Health, adopted September 19, 1973, and published on September 30, 1973, to the trial court as evidence in the cause. This was received after the overruling of the appellant's motion to quash and demurrer raising the constitutionality of this regulation. The regulation and minutes in question are as follows:

"I, Dr. Ira L. Myers, State Health Officer, certify that in conformity with Title 22, Section 258 (26–38), Code of Alabama 1940, as amended into Alabama law during the Regular Session of 1971, the State Board of Health, at its regular meeting of September 19, 1973, placed Methaqualone (including its salts and derivatives and other drugs of this group manufactured under various trade names) in Schedule IIN (non-narcotic). I further certify that this action is reflected in the minutes of the Board meeting of that date (September 19

1973). (A copy of the minutes of the Board is attached.)

"The control of Methaqualone was effective on September 30, 1973 (date of publication).

"S/ Ira L. Meyers

Ira L. Meyers, M.D.
State Health Officer"

.    .    .    .    .    .

"            MINUTES
STATE COMMITTEE OF PUBLIC
            HEALTH
        September 19, 1973

"CONTROLLED SUBSTANCES:

"The State Health Officer called attention to a number of letters that have been received since March, 1973. Many letters have been received in the past week urging the inclusion of Methaqualone as a controlled substance. Earlier requests resulted in a recommendation to Federal authorities that this should be placed under Federal control which would automatically bring it under State control. The widespread abuse of this drug indicates that urgent action is needed on the part of the State. Its actual potential for abuse has been demonstrated. Its pharmacological effects are listed in reference documents available to the medical profession and in current medical literature. Scientific knowledge has accumulated documenting the history and current pattern of abuse. The significance of this abuse has been noted by numerous agencies, concerned citizens, and law enforcement officials. Its disturbing psychic effects indicate it is a risk to public health and it is a sedative-hypnotic agent chemically unrelated to the other sedative-hypnotics. Precautions for this drug note the possibility of use of this drug in suicide attempts and adverse reactions include a variety of neuro-psychiatric symptoms. In the light of these urgent complaints and requests and in accord with the provisions of the Code of Alabama 1940, as amended, Title 22, Section 258(26-38), the State Health Officer recommended this drug be placed in Schedule II-N. Conversation with Federal authorities indicates this is a classification being considered by them for future action. It was moved by Dr. Strandell, seconded by Dr. Yohn, that Methaqualone, its salts and derivities, be placed in Controlled Substances Schedule II-N and that it be published; the motion carried unanimously.

"The above is a true extract copy of the Minutes of the State Committee of Public Health of September 19, 1973.

"S/ Ira L. Meyers M.D.

Ira L. Meyers, M.D.
State Health Officer"

Just prior to trial, a hearing was held on appellant's motion to suppress the seizure of a bottle of pills seized from the appellant at the time of his arrest, November 10, 1973, at Ballew's Truck Stop and Restaurant in Muscle Shoals, Alabama. At the hearing on the motion to suppress, the State presented the testimony of Muscle Shoals Police Officer Robert Hall, who testified that he, Lt. Bill Parrish, and Lt. George Boatwright, of the Muscle Shoals Police Department, were asked to answer a call, about 8:00 in the evening, on November 10, 1973, to go to Ballew's Truck Stop. He testified that, in response to the police radio call, he arrived on the scene about the same time as the other police vehicle, and that Lt. Parrish spoke to a man operating the service station at this place. Officer Hall stated that he spoke to the waitress who made a complaint to him and pointed to a booth in which the appellant, Wayne Cassell and one Ricky Parker were seated. He stated that he approached the booth, appellant started to get up, staggered, and sat back down, that he got up again and staggered, that he walked up to him and immediately smelled alcohol on his breath. He stated that he spoke to the appellant, who mumbled, and asked him if he

had been drinking, to which the appellant replied, "Yes I have." He stated that at this point, in his opinion, the appellant was under the influence of alcohol to the point of being publicly drunk, that he then advised the appellant that he was under arrest and asked the appellant how much he had been drinking. He stated that the appellant mumbled some words and reached his hand into the front pocket of his jacket. He stated that as the appellant did this, he grabbed his wrist and pulled his hand back out of his pocket, and as he did so, there was revealed in the appellant's hand a bottle of pills. He stated that Lt. Boatwright walked up as this occurred.

The appellant's motion to suppress was overruled.

The State presented the testimony of Lt. Bill Parrish of the Muscle Shoals Police Department, who testified that in response to a police radio call, he drove to Ballew's Truck Stop and Restaurant on November 10, 1973. He testified that the call came from the Police Department dispatcher over his police radio. He stated that he stopped to speak to the service station attendant upon arrival, and that Sgt. Hall, who accompanied him, proceeded into the restaurant. He stated that in a few minutes Lt. Boatwright arrived, and that the two of them then followed Sgt. Hall into the restaurant. He testified that one of the waitresses advised him that they had been having trouble with the appellant and his companion, Mr. Parker, and when they approached the table, Ricky Parker attempted to stand and fell back into his seat, slumping over. He stated that the appellant attempted to stand, slumped back into his chair, and then got up a second time, that he was swaying and staggering, and that he smelled alcohol on his breath. He stated that the appellant's speech was slurred, and that there were women and other customers present in the restaurant at the time the appellant and his companion were placed under arrest for drunkenness. He stated that this occurred within the city limits of Muscle Shoals in Colbert County, Alabama.

Lt. George Boatwright testified that he was an officer employed by the Muscle Shoals Police Department on November 10, 1973. In response to a police radio call, he drove his vehicle to Ballew's Truck Stop and Restaurant, and upon arrival noticed that a police vehicle in which Lt. Parrish and Sgt. Hall were riding had just pulled in. He stated that Lt. Parrish spoke to the man who operated the service station, that a lady came outside and told them that a couple of men inside the restaurant had been throwing food, that she pointed to the table where the appellant, Wayne Cassell, and his companion, Ricky Parker, were seated. He stated that he walked to the table, and as he did so, he saw the appellant put his hand into his coat pocket, that Sgt. Hall grabbed appellant's wrist. He observed Sgt. Hall pull the appellant's hand from his jacket pocket, and as he did so, a bottle of pills were observed in appellant's hand. He testified that he opened the bottle, and that it contained seventeen pills. He stated that the appellant's speech was slurred, and that he detected alcohol on his breath, that his eyes were bloodshot and red, and that the appellant had been drinking "a good bit."

Sgt. Robert Hall testified that he was employed by the Muscle Shoals Police Department on November 10, 1973. He stated that he was riding with Lt. Parrish when they received a police radio report of a disturbance at Ballew's Truck Stop and Restaurant. He stated that they drove there, that Lt. Parrish spoke to the service station attendant, and that a waitress came to him and pointed out a table at which the appellant and his companion, Ricky Parker, were seated. She stated that they had thrown food, that when he approached the table, the appellant started to get up, staggered and slumped back down. He stated that the appellant tried to get up again and staggered and swayed, that appellant mumbled when he was asked "had he been drinking." He stated that in his opinion

the appellant was drunk. He stated that he asked the appellant how much he had been drinking, and the appellant replied, "God Damn, I don't know," or something to that effect. He stated that he then advised the appellant that he was under arrest for drunkenness, and as he did so the appellant rammed his right hand into his jacket pocket, that he immediately grabbed appellant's wrist and pulled his hand back from his jacket. He stated that in the appellant's clutched fist was a bottle of pills. He stated that Lt. Boatwright came up at this time and removed the pills from the appellant's hand and counted them. He stated that the bottle and the pills were then kept in his possession until he took two of the pills from the bottle and delivered them to the office of the State Toxicologist for examination on November 12, 1973.

Mr. John Kilbourn testified that he was employed by the office of the State Toxicologist at Florence, Alabama, and had been so employed for approximately five and one-half years. He testified that he had done numerous drug identifications and had done graduate work in drug identification. He testified that on November 12, 1973, he received two round orange-yellowish tablets with an A/S imprint on them from Sgt. Robert Hall of the Muscle Shoals Police Department. He testified that he examined these two tablets and found them to be methaqualone, which were manufactured by the company, Arner Stone, which manufactures these tablets under the brand name of sopers. He testified that these tablets are a controlled substance under the Alabama Uniform Controlled Substances Act, and were placed on the Controlled Substances Act by the State Board of Health on September 30, 1973. He testified that these tablets required the prescription of a registered medical practitioner and were a major tranquilizer or depressant, usually prescribed for older people who have difficulty sleeping.

The appellant moved to exlude the State's evidence, which was overruled.

The appellant did not present any evidence at trial.

I

The appellant's motion to quash and demurrer raised the question of the constitutionality of the regulation adopted by the State Board of Health on September 19, 1973, and published on September 30, 1973, placing methaqualone and its derivatives and salts on the Controlled Substances list pursuant to the provisions of Title 22, Sections 258(26), 258(30), and 258(38), Code of Alabama 1940, as amended 1971 (The Alabama Uniform Controlled Substances Act, Act No. 1407, Acts of Alabama (1971).

In appellant's motion to quash and demurrer, he asserts that the placing of the drug in question, methaqualone, on the Controlled Substances list by the State Board of Health was an unlawful act being unlawful delegation of legislative authority to the State Board of Health, and that the indictment was for an offense promulgated by the regulation of the State Board of Health and not by a legislative act as required by Article 3, Sections 42 and 43, of the Constitution of Alabama 1901.

In *Sanders v. State,* 53 Ala.App. 534, 302 So.2d 117, Judge Harris, speaking for a unanimous court, observed:

"The Legislature has the constitutional right to provide for the creation of administrative boards and commissions with authority to enact regulations and change them from time to time, and to make a violation thereof a criminal offense. In the case of *State v. Keel,* 33 Ala.App. 609, 35 So.2d 625, we find this pronouncement:

" 'The appellate courts of this State are firmly committed to the constitutional right of the Legislature to provide for the creation of administrative boards and commissions with authority to enact regulations and change them from time to time, and that a violation of them will be a criminal offense. *Ferguson v. Star-*

*key,* 192 Ala. 471, 68 So. 348; *Mc-Elderry v. Abercrombie,* 213 Ala. 289, 104 So. 671; *Alabama Public Service Commission v. Mobile Gas Co.,* 213 Ala. 50, 104 So. 538, 41 A.L.R. 872; *State v. McCarty,* 5 Ala.App. 212, 59 So. 543; *Ferguson v. Commissioners' Court of Jackson County,* 187 Ala. 645, 65 So. 1028; *Bond v. State Board of Medical Examiners,* 209 Ala. 9, 95 So. 295; *Parke v. Bradley,* 204 Ala. 455, 86 So. 28; *Hill v. Cameron,* 194 Ala. 376, 69 So. 636; *Horn v. State,* 17 Ala.App. 419, 84 So. 883; *Reims v. State,* 17 Ala.App. 128, 82 So. 576.' "

In *Parke v. Bradley,* 204 Ala. 455, 86 So. 28, Mr. Justice Somerville observed:

"It is too well settled for further controversy that the Legislature of Alabama may delegate to officers, or boards, or commissioners, of its own creation and appointment, various governmental powers for the more efficient administration of the laws, subject always to the clearly implied limitation of the Constitution that the lawmaking power, invested exclusively in the Legislature, cannot be delegated to any other department of the government, or to any other agency, either public or private. [Authorities cited therein.]

. . . . . .

"But it is thoroughly well settled by the decisions of this, as well as other states, that the implied limitation against the delegation of the lawmaking power was never intended to prevent Legislatures from authorizing their own appointed agencies to make such minor rules and regulations as are necessary or appropriate for the administration and enforcement of the general laws of the state." [Authorities cited therein.]

To the same effect, see *State ex rel. Bond v. State Board of Medical Examiners,* 209 Ala. 9, 95 So. 295.

Moreover, this Court and the Supreme Court of Alabama have previously upheld other aspects of the Alabama Uniform Controlled Substances Act. See *Boswell v. State,* 290 Ala. 349, 276 So.2d 592; *Warren v. State,* 52 Ala.App. 35, 288 So.2d 817, reversed on other grounds, 292 Ala. 71, 288 So.2d 826; *Kenny v. State,* 51 Ala.App. 35, 282 So.2d 387, cert. denied 291 Ala. 786, 282 So.2d 392.

Further, as noted by Mr. Justice De Graffenried, then Judge De Graffenried of this Court, in *State v. McCarty,* 5 Ala.App. 212, 59 So. 543:

"The validity of such statutes, says the Supreme Court of Massachusetts, has been long recognized, and may be upheld upon one or both of two grounds: 'They may be considered as being within the principle of local self-government as to such matters; the board of health being treated as properly representing the inhabitants in making regulations, which often are *needed* at *short* notice, and which could not well be made, in all kinds of cases, by the voters in town meeting assembled. Perhaps some of these statutes may also be justified constitutionally, on the ground that the work of the board of health is only a determination of *details* in the nature of *administration* which may be by a board appointed for that purpose; and that the *substantive* legislation is that part of the statute which *prescribes a penalty* for the disobedience of the rules which they make as agents performing executive and administrative duties.' "

Under the foregoing authorities, it is clear therefore that the State Board of Health properly placed the drug "Methaqualone," its salts and derivatives on the list of Controlled Substances, pursuant to Title 22, Sections 258(26), and 258(30), Code of Alabama 1940, as amended 1971. This was properly published, as required by law (Title 22, Section 258(38), Code of Alabama 1940), by publication in a newspaper, or newspapers, of general circulation in the State, to-wit, the Birmingham New and Post-Herald, under date of Sep-

tember 30, 1973. This Court takes judicial notice of the reasonable rules and regulations of the State Board of Health, having been duly adopted, which have the force and effect of law. *Sanders v. State,* 53 Ala.App. 534, 302 So.2d 117, and authorities therein cited.

It is clear, therefore, that the trial court properly overruled the appellant's motion to quash and demurrer in this cause.

## II

■ The appellant, by his motion to suppress, asserts that the officers making the arrest of the appellant at the Ballew's Truck Stop and Restaurant on November 10, 1973, lacked probable cause since the arrest in question was for public drunkenness, a misdemeanor, and they had no warrant for the appellant's arrest. This argument, however, overlooks the fact that an officer may arrest for a misdemeanor committed in the officer's presence. Title 15, Section 154, Code of Alabama 1940; *Green v. State,* 238 Ala. 143, 189 So. 763, and authorities cited therein.

■ In the case at bar, the officers had received a complaint upon arrival at the scene that the appellant and his companion had thrown food within the restaurant. Upon approaching the appellant and his companion, it was apparent to the officers that each had consumed a great deal of alcohol, and each had difficulty in standing. In fact, the appellant's speech was slurred and he mumbled, his eyes were red, and his face flushed. The odor of alcohol about his person was distinct. In fact, the appellant staggered and fell into his seat before rising again and standing in a weaving manner. Clearly here, the statutory requirements were met. Title 14, Section 120, Code of Alabama 1940. This was not a case of the accused merely staggering. See *Pettus v. State,* 26 Ala.App. 347, 159 So. 502; *Huckabee v. State,* 34 Ala.App. 288, 39 So.2d 43.

It is clear from the testimony of the officers in this case that they had probable cause to arrest the appellant, *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; *Wright v. State,* 54 Ala. App. 558, 310 So.2d 482, and the trial court therefore properly overruled the appellant's motion to suppress and his motion to exclude the State's evidence. *Tatum v. State,* 32 Ala.App. 128, 22 So.2d 350; *Starnes v. State,* 30 Ala.App. 156, 2 So.2d 333; *Jordan v. State,* 44 Ala.App. 21, 201 So.2d 63.

■ It therefore follows that the arrest of the appellant at Ballew's Truck Stop and Restaurant was proper, and the search of his person incident thereto was clearly lawful. *Jordan v. State,* 44 Ala.App. 21, 201 So.2d 63, and authorities therein cited.

## III

The appellant calls attention to Record pages 39–40, where, during the closing argument, the appellant moved for a mistrial because of the following:

"MR. HUNT CONTINUED: Did he or did he not obtain these things legally.

"MR. McCUTCHEN: I object to that argument, may it please the Court. It's illegal. All he had to do was bring a pharmacist or physician and put them on the stand and show a prescription and that case would be nol prossed and will be tomorrow.

"MR. HUNT: We move for a mistrial at this time on the grounds the District Attorney has attempted to prejudice this jury in making statements out of turn before this jury that the defendant should or should not put on evidence in this case and it is highly prejudicial, illegal, irregular, and we except to it and move the Court for a mistrial.

"BY THE COURT: Overruled.

"MR. HUNT: WE RESERVE EXCEPTION.

"BY THE COURT: I will say this. I don't think the District Attorney said exactly that. If he did, I instruct you, the jury, to dismiss any reference to a statement the state made that the defendant must do this or must do that. You will dismiss it from your minds. The motion is overruled and let's get on. Argue the evidence."

■ We do not consider the above comment, in light of the trial court's instruction, to constitute prejudicial error. The trial court observed that such comment was merely arguendo, and not to be considered as a comment on the defense's failure to present evidence. *West v. State*, 54 Ala. App. 647, 312 So.2d 45, cert. denied 294 Ala. 78, 312 So.2d 52, and authorities therein cited.

■ It is clear that the district attorney was attempting to point out that the prosecution need not negative those matters which are properly matters of defense, i. e., whether or not the appellant had a prescription for the drug in question, see *Watkins v. State*, 50 Ala.App. 111, 277 So. 2d 385, cert. denied 291 Ala. 801, 277 So.2d 389; and *Johnson v. State*, 51 Ala.App. 649, 288 So.2d 186, and therefore such should not be considered as a suggestion or comment on the failure of the appellant to testify at trial. In light of the trial court's instructions, we are of the opinion that error is not here shown. *West v. State,* supra, and authorities therein cited.

### IV

The appellant next calls attention to record pages 45 and 46 where he attempted to make his exception to the trial court's oral charge pertaining to the reading to the jury of certain sections of the Code of Alabama. The record discloses (R. p. 46) that the jury had retired prior to the appellant's exception.

In *Cox v. State*, 280 Ala. 318, 193 So.2d 759, Mr. Justice Coleman made the following observation:

"In the instant case, defendant and his counsel were present in court. They heard the oral charge. Defendant then had the burden and the opportunity to state defendant's objections to the court before the jury retired to determine their verdict. So far as we are advised, that rule has always been followed in this state. To allow defendant to complain of error in the charge at a later time would give him the opportunity to be aware of the court's error, but to remain silent, speculate on a favorable verdict, and in the event of an unfavorable verdict to obtain reversal on a ground which defendant deliberately chose not to raise by exception taken at the appointed time.

"When a party has been given fair opportunity to exercise a right and fails to do so, we do not think it can be truly said that the party was denied that right. Because defendant did not except to the oral charge, the trial court will not be reversed for the alleged error in that charge."

■ We are of the opinion, in light of the above, that the appellant's exception was not timely, and because of this the oral charge is not properly presented to this Court for review. *Meadows v. State*, 182 Ala. 51, 62 So. 737; *Brown v. State*, 27 Ala.App. 32, 165 So. 405; Volume 6A, Criminal Law, ☞841.

■ Moreover, the alleged exception was to the trial court's reading from Title 22, Sections 258(30) and 258(40), as well as reading the minutes of the State Board of Health of September 19, 1973, placing Methaqualone on the Controlled Substances list. There was not error in the trial court's reading these Code sections, under which the appellant was being prosecuted, to the trial jury, nor in reading the minutes of the State Board of Health here in question to the jury in its charge. *Frazier v. State*, 159 Ala. 1, 49 So. 245; *Green v.*

*State*, 42 Ala.App. 439, 167 So.2d 694, cert. denied 277 Ala. 698, 167 So.2d 701.

### V

 We note in this record a conflict between the minute entry (R. pp. 60–63) and the colloquy at the time of sentence (R. p. 58), which colloquy fails to show that the appellant was asked if he had anything to say before the imposition of sentence in this cause. In light of this, we feel it proper to remand this cause for proper sentence, otherwise the judgment is affirmed. *Smith v. State*, 28 Ala.App. 506, 189 So. 86; *Thomas v. State*, 280 Ala. 109, 190 So.2d 542.

We have carefully reviewed this record, and except for the failure to show an allocutus before the imposition of sentence, we find no error therein. It therefore follows that the judgment of the trial court is due to be and the same is hereby affirmed, but remanded for proper sentence.

Affirmed, but remanded for proper sentence.

HARRIS, DeCARLO, and BOOKOUT, JJ., concur.

CATES, P. J., dissents.

CATES, Presiding Judge (dissenting).

I do not think that under our constitution the Legislature may pass, Pilate-like, its power to define a crime to an executive officer or body.[1] *State v. Vaughan*, 30 Ala.App. 201, 4 So.2d 5. The Public Service Commission is a legislative arm empowered to make only findings of fact within the scope of a formula laid down by the Legislature. Ala.Digest, Constitutional Law, Key No. 60.

This case does not show a minor rule or regulation to fill an interstitial gap in a statute. See *Parke v. Bradley*, 204 Ala. 455, 86 So. 28. Delegation of the power to define crime would be the beginning of despotism.

---

1. Our current session is about to make legal a 55 mile per hour speed limit. See *Brown*, 32 Ala.App. 246, 24 So.2d 450. The need of such a statute is an implied admission of a lack of law beforehand.