STATE, ex rel. EUGENE OGLESBY, *Plaintiff in Error,* v. C. M. HAND, Sheriff, *Defendant in Error.*

Division A.

Opinion filed December 17, 1928.

Judgment affirmed.

*J. U. Gillespie,* for Plaintiff in Error;

*Fred H. Davis,* Attorney General, and *H. E. Carter,* Assistant, for the State.

ELLIS, C. J.—Eugene Oglesby was charged with unlawfully attempting to take fresh water fish from Lake Monroe in Seminole County by means of a drag-seine more than two hundred yards in length and was convicted and sentenced to pay a fine of ten dollars with an alternative sentence of thirty days in jail in default of payment of the fine.

While in the custody of the sheriff under the judgment the petitioner aplied for a writ of habeas corpus and moved for his discharge upon the ground that the Act under which he was convicted was unconstitutional. The circuit judge before whom the writ was returned remanded the petitioner to the custody of the sheriff to abide the judgment of the county court. Oglesby took a writ of error to that judgment.

An attack is made upon the validity of Chapter 11838, Laws of Florida 1927.

The offense with which the accused was charged is denounced by Sec. 25 of the above named Act, which prohibits the taking, or attempting to take, any fresh water fish from the fresh waters of the State by means of any device except hook and line, rod and reel, bob, spinner, or troll, unless specificially permited by the Act. Sec. 74 of the Act provides for the punishment to be inflicted upon the person found guilty of violating any of the provisions of the Act.

It is contended that the Act is bad because its title fails to express the different subjects covered by the Act.

The purpose of the Act was to create the Department of Game and Fresh-Water Fish and the office of State Game Commissioner and to provide for the protection and conservation of game, non-game birds, fresh-water fish and fur-bearing animals. The title of the Act is unnecessarily full. Its subject is set out in the first two lines: ''AN ACT Relating to Game, Non-Game Birds, Fresh Water Fish and Fur-Bearing Animals.'' The remainder of the title deals with the means or agencies through which the purpose of the legislation shall be developed and executed.

The unnecessary or superfluous matter contained in the title is not calculated to deceive or mislead. While the title need not be an index to the contents of the Act, it is not

rendered bad by amplification to embrace matters germane to and properly connected with the general subject. See State, ex rel. Modie v. Bryan, 50 Fla. 293, 39 So. R. 929; See State, ex rel. Lamar v. Jacksonville Terminal Co., 41 Fla. 363, 27 So. R. 221.

Where all the provisions of an Act are germane to the subject and properly connected with it, the criticism that it violates constitutional provisions restricting each law to one subject is not well founded. Article III, Sec. 16 Constitution.

The provision forbids the Legislature to embrace in one Act two unconnected subjects. See Schiller v. State, 49 Fla. 25, 38 So. R. 706; Fine v. Moran, 74 Fla. 417, 77 So. R. 533; Smith v. Chase 91 Fla. 1044, 109 So. R. 94.

Only the subject and not matters properly connected therewith is required by the constitution to be expressed in the title to an Act. See Hayes v. Walker, 54 Fla. 163, 44 So. R. 747; Thompson v. State, 66 Fla. 206, 63 So. R. 423; ex parte pricha, 70 Fla. 265, 70 So. R. 406; ex parte gilletti, 70 Fla. 442, 70 So. R. 446.

Where the title of an Act expresses its subject with sufficient certainty to give reasonable notice of matters dealt with by the Act and of its scope and reasonably leads to inquiry as to its contents it is sufficient. See Lainhart v. Catts, 73 Fla. 735, 75 So. R. 47.

There must be a plain case of violating the constitutional requirement before the court will nullify statutes as not being within the subject embraced in the title and of matter properly conected therewith. See Rushton v. State, ex rel. Collins, 75 Fla. 422, 78 So. R. 345; State, ex rel. Terry v. Vestel, 81 Fla. 625, 88 So. R. 477; Lewis v. Leon County, 91 Fla. 118, 107 So. R. 146.

Wide latitude must of necessity be allowed the Legislature in its enactments of law. "The subject of an enact-

ment may be as broad or restrictive as the Legislature may determine in the absence of controlling organic provisions." See Smith v. Chase, *supra*.

The act deals with the subject of the conservation of fish and game in this State. Fish can and should be classed as game. See 8 Am. and Eng. Ency. Law 1023.

Blackstone, in writing of animals *ferae naturae* classes fish with fowls of the air, there being in nature no distinction between one species of wild animals and another. 2 Blackstone's Com. 403. See also II Kent's Com. 416.

Fish within the waters of a State are a species of property commonly designated as wild game. See State v. Southern Coal Company, 71 W. Va. 470, 76 So. E. R. 970, 43 L. R. A. (N. S.) 401, 26 C. J. 594.

In the case of People v. Truckee Lumber Company, 116 Cal. 397, 48 Pac. R. 374, 39 L. R. A. 581, 58 Am. St. R. 183, it is held that fish within the waters of a State constitute the most important part of that species of property commonly designated as "wild game," the general right and ownership of which is in the pople of the State. The right to protect such property for the common use and benefit is one of the recognized prerogatives of the sovereignty. This right of the State is abundantly sustained by the highest authority. McCready v. Virginia, 94 U. S. 391, 24 L. Ed. 248; Geer v. State of Connecticut, 161 U. S. 519, 40 L. Ed. 793, 16 Sup. Ct. R. 600.

The Act is not amenable to the criticism that it embraces more than one subject and matter properly connected therewith, because it creates a State Department of Game and Fresh Water Fish and the office of State Game Commissioner and prescribes his powers, duties and compensation and provides for the appointment of a "Wild Life Conservation Commission" and prescribes its duties. All such matters, as well as those which prohibit fishing and

hunting without license as those regulating the method or means by which wild animals or fish may be captured and providing penalties for violating the Act, are proper provisions in connection with the subject.

It is no constitutional objection to an Act that the Legislature has provided in it for unnecessary, cumbersome, expensive and complicated machinery for the execution of the idea which constitutes the subject of the legislation. Such criticism may go to the wisdom but not the power of that body of law makers. It might have divided the subject into as many parts as there are species of wild game to be conserved and provided cumbersome and expensive machinery for the execution of the statute in each case—but that it puts all species of "wild life" under the jurisdiction of one agency of the government in one Act is more to be commended than adversely criticised. That it provides too much machinery, too many officers, agents, deputies, etc., and vests them with too many and varied powers, goes to the judgment of those who make the laws for the State, but not to their power in Legislature assembled.

It is contended that the Act is bad because while it purports to be a general law it contains provisions that are local in character and application; that it is discriminatory and unreasonable, destroying uniformity of application and attempts to delegate Legislative powers to the three different agencies: The State Game Commissioner, The Wild Life Conservation Commission and the Department of Game and Fresh-Water Fish.

The Department of Game and Fresh-Water Fish and The State Game Commissioner constitutes one and the same agency with all the functions, powers and emoluments in the latter. The Wild Life Conservation Commission is brought into existense by Sec. 4 of the Act. It consists of one person from each congressional district. They serve

without compensation and their qualifications are to ''have intimate knowledge of wild life.'' The phrase presumably refers to fish and game habits and habitat. The powers of the Commission seem to be advisory only.

Sec. 1 of the Act defines Fresh Water to be all lakes, rivers, canals and creeks and other fresh waters up to the ''mouths'' of such waters where they empty into salt water or where signs are placed by the State Game Commissioner marking the mouth of the river. Lake Okeechobee; The St. Johns River from its mouth as far south as Volusia Bar, including Doctors Lake and Lake George; Carrabelle and New Rivers in Franklin County; The Suwannee river as the forks forming the east and west passes and the Wacasassa river as far north as the mouth of Cow Creek are excepted from the lakes and rivers defined to be fresh waters.

Sec. 25 makes it unlawful to take or attempt to take any fresh water fish from the fresh waters of the State by means of any device except hook and line, rod and reel, bob, spinner or troll, unless specifically permitted by the Act. The section then proceeds to make special provision for the use of other means for catching certain kinds of fish in the Apalachicola and Chattahoochee rivers, for the catching of sturgeon during certain months and shad in St. Mary's river during the open season and for the catching of shad, mullet and suckers during the open season with nets on permits to be issued by the State Game Commissioner. It also makes provision for the use of nets of certain lengths and mesh size, or such as the State Game Commissioner may prescribe, in Lake Kissimmee, Lake Jackson, Lake Marion, Lake Lizzie, Lake Alligator in Osceola County, Lake Ocheesee in Jackson County and Alapaha river in Hamilton County during the open season.

Sec. 35 prescribes the open season for fresh water fish but the provisions of the Act do not apply to the waters

named as exceptions in the first section. Several sections of the Act, dealing with the taking of fresh water fish and the transportation and sale of them, exclude certain fresh waters of the State from its provisions. So that fishing in such waters during the open season, or at other times, is not regulated by the provisions of the Act except in those instances where the State Game Commissioner may prescribe the size of the mesh and length of net to be used.

It is argued that on account of these and like provisions discriminations are made against persons living in different sections of the State who desire to engage in fishing as a business and whose supply of fish is in the waters not excluded by Sec. 1 and other sections; that petitioner is one on such persons discriminated against and is competent to raise the point.

Assuming that the exclusion of certain fresh water lakes and rivers from all others in the State to which the provisions of the Act do apply is a classification of waters as to fishing rights, it operates as no discrimination against persons. And it is entirely within the range of legislative discretion that conditions exist in the location of the waters excluded and the waters themselves which make it advisable within legislative wisdom to exclude them from the provisions of the Act. Such is the doctrine held in State, ex rel. Clarkson v. Phillips, 70 Fla. 340, 70 So. R. 367; Harper v. Galloway, 58 Fla. 255, 51 So. R. 226.

We have examined all the cases cited by counsel in his able brief but we do not agree with his theory. We hold that the exception in favor of Confederate soldiers is a classification of individuals which under the legislative policy of this State and judicial utterances in other cases is reasonable and does not render the Act amenable to the criticism of unlawful discrimination.

Finding no error the judgment is affirmed.

STRUM AND BROWN, J. J., concur.

WHITFIELD, P. J. AND TERRELL AND BUFORD, J. J., concur in the opinion and judgment.