302 So.2d 117

**John SANDERS and Bernard Ray Tanner**

**v.**

**STATE.**

**7 Div. 314.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1974.

William J. Baxley, Atty. Gen., Robert A. Macrory, R. Emmett Poundstone, and William G. O'Rear, Asst. Attys. Gen., for the State.

Jetton & Ogden, Guntersville, for appellants.

HARRIS, Judge.

Both Sanders and Tanner were put to trial upon identical Complaints of the District Attorney in the Circuit Court of the Eighteenth Judicial Circuit, sitting without a jury, which read as follows:

"DISTRICT ATTORNEY'S COMPLAINT

"THE STATE OF ALABAMA, ⎱ THE CIRCUIT COURT OF
"SHELBY COUNTY.　　　　　⎰ THE EIGHTEENTH JUDICIAL
　　　　　　　　　　　　　　　　CIRCUIT

Fall Term, 1973
On Appeal from Inferior
Court. Shelby County,
Alabama

"The State of Alabama, by its District Attorney, complains of John Sanders That, within twelve months before the commencement of this prosecution, John Sanders did unlawful (sic) use nets for commercial fishing purposes in a (sic) impounded public waters of the State of Alabama in which Morone saxatilis had been stocked, in promulgation for the Department of Conservation, for the State of Alabama, rule dated December 12, 1972, and being in violation of Regulation No. A–719, against the peace and dignity of the State of Alabama.

"s/ Harold E. Walden
District Attorney, Eighteenth Judicial Circuit
of Alabama"

———◆———

They both filed separate motions to quash or dismiss, alleging:

1. That the regulation on which this cause is based is unconstitutional.

2. That the said regulation violates the Fifth and Fourteenth Amendments of the Alabama and United States Constitutions in that it is discriminatory.

3. That the said regulation violates the constitutional rights of the defendant in that it is discriminatory.

The above motions were filed on January 14, 1974, and denied on March 4, 1974.

■ In denying the motions to quash the trial court, inferentially, at least, upheld the constitutionality of Regulation A–719 promulgated by the Commissioner of Conservation and Natural Resources of Alabama under date of December 12, 1972, which is as follows:

"STATE OF ALABAMA 　　　⎱ REGULATION A–719
MONTGOMERY COUNTY ⎰ (Game & Fish)

"By authority vested in me as Commissioner of Conservation and Natural Resources by Title 8, Sections 17, 21 and 81 (13), Code of Alabama 1940, as amended, I do hereby establish and promulgate the following regulation which shall have the force and effect of law.

"Section 1. Effective at sundown on December 12, 1972 it shall be unlawful to use nets of any type for commercial fishing purposes in all impounded public waters of Alabama in which Morone saxatilis, commonly known as saltwater striped bass, have been stocked.

"Section 2.   Nothing in this regulation shall be construed so as to preclude the lawful use of set lines, trotlines, or snag lines for the taking, killing, or catching of commercial or non-game fish from said waters.

"Section 3.   A list of the public waters in which saltwater striped bass have been stocked may be obtained from the Department of Conservation and Natural Resources, Game and Fish Division, or any of its law enforcement officers.

"Section 4.   The penalty for violating this regulation is provided for by Title 8, Section 81(28), of the Code of Alabama 1940, as amended.

"Section 5.   All regulations or parts thereof in conflict with the provisions of this regulation are hereby expressly repealed.

"IN WITNESS WHEREOF, I have hereunto set my hand and have caused the seal of my office to be affixed in the City of Montgomery on this the 12th day of December, 1972.

"/s/ Claude D. Kelley,
Commissioner Department of Conservation and Natural Resources"

### "ALABAMA WATERS STOCKED WITH SALTWATER STRIPED BASS

| Waters stocked | Counties | Dates |
|---|---|---|
| Lake Martin | Tallapoosa<br>Coosa<br>Elmore | 11–11–65<br>12–14–66<br>12–18–66<br>1– 5–67<br>10–10–67<br>11–15–68<br>1–31–69<br>6–19–69<br>6– 3–71 |
| Lake Jordan | Elmore<br>Coosa<br>Chilton | 6–13–69 |
| Lake Mitchell | Coosa<br>Chilton | 6–13–69 |
| Lay Lake | Coosa<br>Chilton<br>Shelby<br>Talladega | 6–13–69 |
| Jones Bluff | Autauga<br>Lowndes<br>Montgomery<br>Elmore | 11–21–69<br>4–17–72<br>6– 1–72 |
| Logan Martin | Talladega<br>St. Clair | 6–12–72<br>7– 6–72 |
| Neeley Henry | St. Clair<br>Calhoun<br>Etowah | 6–12–72 |
| Weiss Lake | Cherokee | 6–12–72" |

Both appellants waived severance and consented to consolidation of the cases pending against them.

The cases were submitted to the trial court on a properly executed Stipulation of Facts, as follows:

"IT IS STIPULATED, by the Defendants, through their attorney, William D. Jetton, and the State of Alabama, through its District Attorney, Harold E. Walden, in Cases Number 11095 and 11096, that the facts in both cases are as follows:

'That on or about the 2nd day of February, 1973, the Defendants, John Sanders and Bernard Ray Tanner, were present in Shelby County, Alabama, and also present on the waters of Lay Lake, or Coosa River, and at such time and place were employing commercial netting equipment for the purpose of catching non-game fish; that at such time and place the defendants were observed by Conservation Officer Webster, who observed defendants in the employment of such commercial netting equipment; pursuant to the observation by Officer Webster, such information was relayed to Officer Doyle Woods, who then placed the defendants under arrest and charged them with violation of unlawful use of nets for commercial fishing purposes in an impounded public waters of the State of Alabama in which morone saxatilis had been stocked, in promulgation for the Department of Conservation for the State of Alabama, Rule dated December 12, 1972, and being in violation of Regulation No. A–719;' and

"IT IS STIPULATED, that such waters were stocked with fish known as morone saxatilis, commonly known as saltwater striped bass; and whereupon, pursuant to said arrest Officer Doyle Woods, and other members of the Department of Conservation, took into their possession from the Defendants, said commercial fishing gear; to wit, one, 14′ 8″ long fiberglass boat; a 50 horsepower Mercury Motor; 16 gill nets, 100 yards long, each, and, also, certain auxiliary equipment and said equipment has been retained by the Department of Conservation from the date of arrest to the present time, pending Order of the Court.

"Done this the 3rd day of April, 1974.

"/s/ Harold E. Walden
HAROLD E. WALDEN, DISTRICT ATTORNEY

"/s/ William D. Jetton
WILLIAM D. JETTON, Retained Counsel for JOHN SANDERS AND BERNARD R. TANNER."

⬛ The ancient, established, proper and acceptable method to test the constitutionality of a statute, ordinance, or regulation having the force and effect of law, is by demurrer, general or special, and a ruling thereon in the lower court. State ex rel. Knox et al. v. Dillard et al., 196 Ala. 539, 72 So. 56; Cooper v. State, 226 Ala. 288, 147 So. 432.

⬛ Here, there was no demurrer and no express ruling by the trial court on the constitutional question sought to be raised by the motion to quash or dismiss the prosecution on the grounds that it contravenes the Fifth and the Fourteenth Amendments to the Constitution of the United States. This, we suppose, raises, in a general way, a "federal question" that must be grappled with under Duke v. State, 288 Ala. 538, 263 So.2d 170 (1971) and Ex parte Haynes (In Re Haynes v. State of Alabama), 293 Ala. 221, 301 So.2d 208, (1974). As we interpret these cases, the niceties of pleadings should be disregarded in reaching a "federal question".

As we have said, the trial court did not render a formal decree touching the constitutional issue presented by the pleadings but reached the same result, inferentially, in denying the motions to quash or dismiss.

We will, therefore, lay aside the case of Hubbard v. Cornutt, 278 Ala. 512, 179 So. 2d 90, and related cases, and go to the heart of the constitutional question presented in the manner and form it appears in the record before us.

■ The courts take judicial knowledge of all reasonable rules and regulations of the State Department of Conservation having the force and effect of law. West v. State, 30 Ala.App. 318, 6 So.2d 434, certiorari denied, 242 Ala. 369, 6 So.2d 436; Williams v. Kelley, 289 Ala. 440, 268 So.2d 485.

In denying certiorari in *West,* supra, the Supreme Court said:

"Section 23, Gen.Acts 1935, p. 632, Code 1940, Tit. 8, § 21, expressly declares that the rules and regulations therein referred to, and mentioned in the opinion of the Court of Appeals, 'shall have the force and effect of law'. That means very clearly the force and effect of a general law, a public statute.

" 'Where an act at the time of its passage is declared * * * to be a public statute, such declaration is equivalent to enacting that it be judicially noticed, for though local in its application, such a clause will establish it as a public statute and place it within the circle of the judicial knowledge of the court'. 20 Amer. Jur. 60.

"The text is supported by the cited authority of Case v. Kelly, 133 U.S. 21, 10 S.Ct. 216, 33 L.Ed. 513. See also 23 C.J. 1897 upon the question of judicial notice and illustrations to be found."

Appellants contend that Regulation A–719 is "not only unnecessary, but is an unreasonable restraint by the Commissioner, an attempt to alter or amend a legislative act, an attempt to close certain impounded waters to the commercial fishing industry, and a delegation, to the Commissioner, of legislative powers." Appellants further contend that this Regulation is redundant, unnecessary, unreasonable, and is a sham, arbitrary and capricious, and promulgated for one purpose, viz., to prohibit commercial fishing in specified counties. We do not agree.

Section 1 of Regulation A–719 provides that at sundown on December 12, 1972, it shall be unlawful to use nets of any type for commercial fishing purposes *in all impounded public waters of Alabama in which morone saxatilis* (commonly known as saltwater striped bass) have been stocked.

Section 2 of said Regulation expressly provides, "nothing in this regulation shall be construed so as to preclude the lawful use of set lines, trotlines, or snaglines for the taking, killing, or catching of commercial or non-game fish from said waters."

■ The Legislature has the constitutional right to provide for the creation of administrative boards and commissions with authority to enact regulations and change them from time to time, and to make a violation thereof a criminal offense. In the case of State v. Keel, 33 Ala.App. 609, 35 So.2d 625, we find this pronouncement:

"The appellate courts of this State are firmly committed to the constitutional right of the Legislature to provide for the creation of administrative boards and commissions with authority to enact regulations and change them from time to time, and that a violation of them will be a criminal offense. Ferguson v. Starkey, 192 Ala. 471, 68 So. 348; McElderry v. Abercrombie, 213 Ala. 289, 104 So. 671; Alabama Public Service Commission v. Mobile Gas Co., 213 Ala. 50, 104 So. 538, 41 A.L.R. 872; State v. McCarty, 5 Ala.App. 212, 59 So. 543; Ferguson v. Commissioners' Court of Jackson County, 187 Ala. 645, 65 So. 1028; Bond v. State Board of Medical Examiners, 209 Ala. 9, 95 So. 295; Parke v. Bradley, 204 Ala. 455, 86 So. 28; Hill v. Cameron, 194 Ala. 376, 69

So. 636; Horn v. State, 17 Ala.App. 419, 84 So. 883; Reims v. State, 17 Ala.App. 128, 82 So. 576."

It was not until 1961 that the Legislature designated saltwater striped bass or rock bass as game fish when taken in fresh waters in Alabama. The noble experiment of stocking this species of fish in the public waters of this State was begun in 1965 and the experiment proved successful. When it was determined by the Department of Conservation that saltwater striped bass could live, thrive and propagate in fresh water the program was greatly expanded and today saltwater striped bass have been stocked in the public waters in sixteen counties of Alabama.

Regulation A–719 was made the basis of civil action, No. 3966–N, in the United States District Court for the Middle District of Alabama, Northern Division, in 1973, styled Troy Williams, et al. Plaintiffs v. Claude D. Kelley, etc., et al. Defendants. It was the contention of the plaintiffs that this Regulation deprived them of their right to fish commercially upon certain designated waters of this State and they questioned the reasonableness of that regulation as a violation of their civil rights.

Honorable Frank M. Johnson, Jr., Chief Judge, in his Findings and Conclusions, said:

"I would suspect that arbitrariness and capriciousness, and political motivation, as opposed to sound conservation practices based upon reasonableness, is also inherently involved; and I so consider it in analyzing and evaluating the evidence in the case."

Judge Johnson went on to say:

"Proceeding in the evaluation and the interpretation of the evidence, this Court considers that this Regulation 719, which I refer to as the new regulation, applies only to the waters listed in the addendum attached to that regulation; that is, it applies only to the waters that have been stocked by the Alabama Depart-ment of Conservation and Natural Resources, acting through its Fish and Game Division, with the salt water striped bass. I find nothing unreasonable about the action closing this particular part of Alabama waterways to commercial fishing. The evidence in this case reflects that Regulation 719 was based upon scientific studies; that evidence to the effect that they were based upon scientific studies is undisputed, these studies and conclusions that were made by fish biologists or experts in that particular area being to the effect that commercial fishing, particularly gill net fishing, impedes the growth of striped bass in an impounded and stocked environment.

"All of this means that the Court concludes that there has been no violation by the defendants or any of the defendants' agents of the plaintiffs' civil rights as those rights are guaranteed by Title 42, Section 1983, of the United States Code and as that section has been interpreted by the Supreme Court, particularly the Supreme Court decisions beginning with Monroe v. Pape, 365 U.S. 167, [81 S.Ct. 473, 5 L.Ed.2d 492] in 1961."

Title 8, Section 59, Code of Alabama 1940 is a positive declaration that, until reduced to possession, title to all game and non-game fish is vested in the State. The right of any individual, partnership or corporation to reduce fish from their natural free state to one of private ownership is a privilege, as opposed to a vested right, granted by the State and subject to conditions, regulations and limitations placed on that privilege by the Legislature. The title to, and property in, the fish within the waters of the State are vested in the State of Alabama and held in trust for the people of the State. The State owns the fish, not in a private or proprietary capacity, but in its sovereign capacity and as a trustee for the people of the State. People v. Monterrey Fish Products Co., 195 Cal. 548, 234 P. 398.

One of the most important functions of the Department of Conservation and Natural Resources (Title 8, Section 2, Code of Alabama 1940) is to "* * * protect, conserve, and increase the wildlife of the state and to administer all laws relating to wild life and the protection, conservation and increase thereof. * * *"

Title 8, Section 17, of the Code empowers the Commissioner to regulate "* * * the manner, means, and devices for catching, or taking game fishes, . . . and the manner, means, and devices for catching or taking all other species of fish not designated as game fish; * * *."

Title 8, Section 21, of the Code authorizes the Commissioner to make and promulgate all such reasonable rules and regulations as "he may deem for the best interest of the conservation, protection and propagation" of the wildlife of the state so long as they do not conflict with the existing laws of the state and are not designed to "hamper industry or which will interfere with the operation of any industrial plant or plants or any industrial operation," and such rules and regulations "shall have the effect of law. * * *"

In dealing with the specific area of commercial fishing the Legislature has granted to licensed individuals the privilege or right to use various types of commercial fishing gear, including nets, for the purpose of conducting commercial fishing operations. Title 8, Section 81(13), Code of Alabama 1940. Nevertheless, the lawmakers wisely subjected this privilege to an important limitation by further providing in this section that:

"* * * All such nets . . . shall conform to the rules and regulations promulgated by the director of conservation covering same, who shall designate when, where and how same shall be used, * * *."

■ Appellants urge us to hold that commercial fishing is an *industry* within the purview of Title 8, Section 21, Code of Alabama 1940, and that Regulation A–719 is inconsistent therewith and is, therefore, invalid. The Legislature has not seen fit to declare commercial fishing as an industry and until, and unless, the Legislature makes such declaration, we will refrain from expanding the clear meaning of Section 21, supra, by judicial interpretation. This is solely a legislative function. We have not been cited to, nor has our research revealed, a case anywhere which holds that commercial fishing is an industry.

■ Wherever any occupation, employment, or business is carried on for the purpose of profit, or gain, or a livelihood, not in the arts or learned professions, it is generally regarded as a "trade". Commercial fishing, in the very nature of the undertaking, is a business pursued for profit or gain and we experience no difficulty in concluding that commercial fishing is a "trade" and not an *industry*. See Quarterly Report of the Attorney General of Alabama, April–June, 1939, p. 346.

■ Appellants also contend this Regulation is discriminatory and runs afoul of their constitutional rights embodied in the Fifth and Fourteenth Amendments to the United States Constitution. We are not persuaded that Regulation A–719 works an invidious discrimination against commercial fishermen.

In Bayside Fish Four Co. v. Gentry et al., 297 U.S. 422, 56 S.Ct. 513, 80 L.Ed. 772, the Supreme Court said:

"It never has been found possible to lay down any infallible or all-inclusive test by the application of which it may be determined whether a given difference between the subjects of legislation is enough to justify the subjection of one and not the other to a particular form of disadvantage. A very large number of decisions have dealt with the matter; and the nearest approach to a definite rule which can be extracted from them is that, while the difference need not be

**542**

great, the classification must not be arbitrary or capricious, but must bear some just and reasonable relation to the object of the legislation. A particular classification is not invalidated by the Fourteenth Amendment merely because inequality actually results. Every classification of persons or things for regulation by law produces inequality in some degree; but the law is not thereby rendered invalid, * * *, unless the inequality produced be actually and palpably unreasonable and arbitrary. * * *"

We hold that the subject Regulation is legitimately related to the object of its promulgation to conserve and promote the growth and increase of striped bass in the public waters of this State that have been stocked with this specie of game fish, and was lawfully enacted.

"Generally, the rules and regulations of a public administrative agency are subject to the same principles of construction as apply to the construction of statutes." 73 C.J.S. Public Administrative Bodies and Procedure, § 105.

In reaching the conclusion that this Regulation meets the requirements of all constitutional provisions, both state and Federal, we have not overlooked the cases of State v. Rogers, 281 Ala. 27, 198 So.2d 610, and Williams v. Kelley, 289 Ala. 440, 268 So.2d 485.

In *Rogers,* supra, the Supreme Court struck down a local act applicable only to Limestone County on the ground that said act was in violation of Section 104(14) of the Constitution of 1901.

In *Williams,* supra, the court ruled invalid Regulation A-656 promulgated by the Commissioner of Conservation and Natural Resources, made applicable only to Elmore County, as being in contravention of the same constitutional provision.

In Young v. State, 283 Ala. 676, 220 So. 2d 843, the court said:

" * * * When considering the constitutional aspects of an act, a court is duty

bound not to construe the act as a local one when it is so framed as to be reasonably susceptible of interpretation as a general law. * * *"

 Regulation A-719 is reasonably susceptible of interpretation as a general law. In express terms the Regulation is made applicable to "all impounded public waters of Alabama" that have been stocked with saltwater striped bass.

Affirmed.

ALMON, TYSON and DeCARLO, JJ., concur.

CATES, P. J., not sitting.