BOWEN, Judge.
Jeffrey Beck Clopton and Taitón Berk White, Jr., were convicted of fishing with illegal commercial gear (using a gill net with mesh smaller than 3" knot to knot or 6" stretched) in violation of 220-2-.46(2)(e) of the rules and regulations of the Alabama Department of Conservation and Natural Resources, 3 Alabama Administrative Code, Part 220. Clopton was also convicted of commercial fishing without a license in violation of Ala.Code 1975, § 9-11-142. White was also convicted of fishing with untagged commercial gear in violation of Ala.Code 1975, § 9-11-147. Each offense constitutes a Class A misdemeanor. Ala.Code 1975, § 9-11-156. The boat, motor, trailer, and net involved were confiscated pursuant to § 9-11-156. Each defendant was fined $2,000 for fishing with illegal commercial gear, and $1,500 of the fine was suspended. In addition, each defendant was fined $100 in each of the two remaining cases. On this appeal from those consolidated convictions, each appellant attacks the sufficiency of the evidence to support the convictions and the constitutionality of the rules and regulations of the Alabama Department of Conservation and Natural Resources. Because these issues are related, they will be discussed together.
I.
Each defendant was convicted of fishing with illegal commercial gear. This involved a violation of the rules and regulations promulgated by the Alabama Department of Conservation and Natural Resources requiring the use of a net with a certain minimum size mesh in fresh water. The factual question in these cases is whether the appellants were fishing in fresh or salt water.
The appellants were fishing for mullet in the Blakeley River about four and one-half miles north of the 1-10 causeway bridge in Baldwin County. The mesh of the nets the appellants were using measured one and three-quarters inch knot to knot. That mesh was smaller than that authorized for fresh water, although the nets were legal in salt water.
It was undisputed that the Blakeley River is a tidal river and that the appellants were fishing north of the 1-10 bridge. The testimony indicates that the Department of Conservation considers the water north of the bridge fresh water although it may actually be salt water during certain times. The net the appellants were using would have been legal south of the bridge in salt water. However, as a matter of fact, the prosecution could not prove whether the water in which the appellants were fishing when apprehended was fresh or salt water.
Conservation enforcement officer Dennis Sanford testified that the “line of demarcation drawn by the State of Alabama” Department of Conservation to separate fresh water from salt water in the concerned area was the 1-10 causeway. That officer referred to a “navigational chart of the waters and part of Baldwin County.” That map was not offered or introduced into evidence and is not a part of the record on appeal. It was not authenticated in any manner. “Officer Sanford testified that at various times there is salt water where the appellants were fishing, and that on the date the appellants were arrested, he did not know whether the water in that area was salt or fresh water.
Enforcement officer John Plovanich testified that there is a line of demarcation in Baldwin County relative to fresh and salt water in the particular area. The line is the 1-10 bridge. On direct examination of Officer Plovanich the following occurred:
“Q. Who sets that line?
*1089 “A. I think that was an agreement worked out between game and fish and marine resources—
“Q. Set by the State of Alabama?
“A. Yes, sir.”
Officer Plovanich testified that there were no signs on the river indicating the size of net mesh which is prohibited although there is a sign prohibiting shrimping beyond the causeway bridge. There was testimony that the line of distinction had been enforced for “twenty something years.”
In arguing against the appellants’ motion for a directed verdict of acquittal, the prosecutor stated:
“[T]he evidence before the Court is that this is the line of demarcation established by the State of Alabama so that this question could not come up as to what is salt and what is fresh [water]. And it is a line drawn by the State of Alabama in the river system, the line of demarcation, between salt and fresh. And I submit to the Court that that is the reason that line is drawn because at times the entire bay would have content of fresh as well as a tidal function in the opposite way. In order to avoid those things, the State of Alabama sets a line well into the river so that there won’t be any distinction between what is the river and what is the bay. And the Court can look at the map and you can see the line of demarcation as well into the river so that there won’t be any difficulty on cases such as this.”
II.
The Alabama Legislature has given the Department of Conservation and Natural Resources the authority to create rules and regulations concerning the catching of fish. Section 9-2-7(b) of the Ala.Code of 1975 provides: “The commissioner of conservation and natural resources is empowered: ... (6) To regulate ... the manner, means and devices for catching or taking all other species of fish not designated as game fish.” Section 9-2-8 provides in relevant part:
“The commissioner of conservation and natural resources is authorized to make and promulgate such reasonable rules and regulations not in conflict with the provisions of the game and fish laws as he may deem for the best interest of the conservation, protection and propagation of ... fish and seafoods_ The commissioner of conservation and natural resources shall publish in pamphlet form for general distribution all laws together with such rules and regulations relating to game, birds, fish, fur bearers, sea-foods and other matters over which such commissioner of conservation and natural resources has authority or supervision. Such pamphlet so published shall be received in evidence without further proof of such rules and regulations in any court of this state.”
The Department of Conservation even has the authority to determine where nets of the type used by the appellant could be used. Section 9-11-140 provides:
“Any person engaged in the taking, killing or capturing of commercial or nongame fish from the public impounded waters and navigable streams of the state of Alabama may use in such commercial fishing operations ... gill nets, trammel nets.... However, all such nets ... shall conform to the rules and regulations promulgated by the commissioner of conservation and natural resources covering the same, who shall designate when, where and how same shall be used.” (Emphasis added.)
The appellants do not question the authority of the Department of Conservation to make the regulations they were convicted of violating. Indeed, such a challenge would be without merit. “The legislature has the constitutional right to provide for the creation of administrative boards and commissions with authority to enact regulations and change them from time to time, and to make a violation thereof a criminal offense.” Sanders v. State, 53 Ala.App. 534, 539, 302 So.2d 117, 122 (1974). See also West v. State, 242 Ala. 369, 370, 6 So.2d 436, 437 (1942). The appellants do challenge the constitutionality of the regulation requiring the use of a minimum size mesh for nets used in fresh water where the regulation does not define the term “fresh water.”
*1090 The specific rule of the Department of Conservation involved in this case is Rule 220-2-.46 which provides:
“The following is hereby designated as legal fishing equipment and methods for the taking of commercial or non-game fish in the fresh waters of this State. Any other equipment or methods used in the taking of commercial or non-game fish is a violation of this regulation.
[[Image here]]
“(2) By Licensed Commercial Fishermen
[[Image here]]
“(e) Gill and Trammel Nets the mesh of which is not less than 3 inches knot to knot with a stretch or spread of not less than 6 inches after net has been shrunk.”
The appellants argue that the involved provisions of the Alabama Department of Conservation fail to set forth an ascertainable standard or notice of the prohibited conduct because those provisions do not define fresh water and salt water, and in particular do not define those terms in connection with the Blakeley River.
The district court could have taken judicial notice of the rules and regulations involved. “All reasonable rules and regulations of the State Department of Conservation have the force and effect of law, and courts may take judicial knowledge of the same.” West v. State, 30 Ala.App. 318, 321, 6 So.2d 434, 436 (1941), cert. denied, 242 Ala. 369, 370, 6 So.2d 436 (1942); accord, Robinson v. State, 43 Ala.App. 111, 112, 180 So.2d 282, 283 (1965); Sanders v. State, 53 Ala.App. 534, 539, 302 So.2d 117, 122 (1974). However, there is no indication in the record that the district court took judicial notice of anything. The prosecutor never made such a request. See Prather v. City of Hoover, 585 So.2d 257 (Ala.Cr.App.1991).
Furthermore, we have neither found nor been cited to any rule or regulation of the Department of Conservation either designating the river north of the causeway bridge as fresh water or defining fresh and salt water. See 3 Alabama Administrative Code, Part 220, Alabama Legislative Reference Service. A reading of the transcript of the appellants’ trial reveals no specific testimony that there was such a rule or regulation of the Department of Conservation to that effect. The fact that it may have been the practice or custom of the Department of Conservation to treat the water north of the causeway bridge as fresh water is, as a matter of proof of an element of the particular offense charged and as a matter of constitutional law, utterly insignificant and without meaning. At trial, the prosecutor made no allegation, contention, or showing that the Department of Conservation, in the exercise of the authority vested in it by virtue of § 9-11-140, had enacted a rule or regulation defining fresh and salt water in general or in connection with the Blakeley River in particular. There was no showing that any such regulation had been passed in compliance with the due process requirements set out in the Alabama Administrative Procedure Act found in Ala.Code 1975, § 41-22-1 et seq. See Ex parte Vizzina, 533 So.2d 658, 660 and n. 1 at 660 (Ala.1988). Consequently, the prosecution was required to show that the appellants were fishing in fresh water as a matter of fact as an element of proof of the crime of fishing with illegal commercial gear.
The appellants’ argument that the regulation of the Department of Conservation is unconstitutional because it does not define the terms fresh and salt water appears to have merit.
“It is also settled law that ‘In enacting a criminal statute, there is an obligation on the State to so frame it that those who are to administer it and those to whom it is to be administered may know what standard of conduct is intended to be required and legislation may run afoul of the due process clause because of a failure to set up any sufficient guidance to those who would be law-abiding, or to advise a defendant of the nature and cause of an accusation he is called on to answer, or to guide the courts in the law’s enforcement.’...
“And a person is not required to speculate as to the meaning of a statute at the peril of his freedom. Lanzetta v. State of New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 [1939].”
*1091 Bolin v. State, 266 Ala. 256, 260, 96 So.2d 582, 585-86 (1957). There is a fundamental principle of statutory construction that “where there is nothing to indicate to the contrary, words in a statute will be give the meaning which is generally accepted in popular, everyday usage.” Holloway v. State, 262 Ala. 437, 440, 79 So.2d 40, 42 (1955). Even the application of that principle results in confusion in this particular case because of the testimony that the river is considered to consist of fresh water on some occasions and salt water on others. This unconstitutional infirmity could have been precluded by the adoption of a regulation by the Department of Conservation in accordance with the Alabama Administrative Procedure Act specifically defining which waters will be considered fresh water and which will be considered salt water.
Although the issues of the sufficiency of the evidence and the constitutionality of the regulation are intertwined, we need not answer the constitutionality question. “The rule is clear that the constitutional validity of a statute will not be considered unless essential to a disposition of the cause.” Knox v. State, 365 So.2d 349 (Ala.Cr.App.1978). Each of the appellants’ convictions for fishing illegal commercial gear must be reversed because the prosecution failed to prove whether they were fishing in fresh or salt water as a matter of fact.
Clopton’s conviction in case number DC-90-3737 and White’s conviction in case number DC-90-3741 for fishing with illegal commercial gear are reversed. Clopton’s conviction in case number DC-90-3735 for commercial fishing without a license in fresh water is reversed. White’s conviction in case number DC-90-3740 for failing to identify his fishing gear is reversed. Under Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), those convictions are rendered.
REVERSED AND RENDERED.
All Judges concur.