*1379 Members of the House of Representatives
Alabama State House
Montgomery, Alabama 36130
Dear Representatives:
We have received House Resolution No. 276, which requests our opinion as to whether House Bill 362 violates § 106, 105, or 104(14) of the Constitution of Alabama, 1901.
House Resolution No. 276 reads as follows:
“1. Is House Bill 362 a local bill, and is the failure to publish the bill a violation of Section 106 of the Constitution of Alabama of 1901?
“2. Does House Bill 362 violate Section 105 of the Constitution of 1901, which prohibits the enactment of a local law in any case provided for by general law?
“3. Does House Bill 362 violate subdivision (14) of Section 104 of the Constitution of Alabama of 1901 as a local bill fixing the punishment of a crime?”
As we view your request, you specifically want to know whether H.B. 362, which relates to the catch, capture, or kill of any game or nongame fish by use of a gill, trammel, or similar type net in the waters impounded by the William “Bill” Dannelly Reservoir Dam, is a “general” law or a “local” law.
We have considered the purpose of H.B. 362, and we are of the opinion that H.B. 362 is a “general” law; therefore, we answer each of your questions in the negative.
First, we note that H.B. 362 would amend § 9-11-88, Ala.Code 1975, which makes it unlawful to take, catch, or kill any game or nongame fish by use of a gill, trammel, or similar type net in the waters impounded by Jordan Dam, Lay Dam, Mitchell Dam, or Martin Dam, and in that part of the Tennessee River lying within the boundaries of Alabama and all tributaries thereto.[1]
*1380 In answering your request, we have applied the appropriate standard of review for determining the constitutionality of a legislative act, and we opine that the State has the power to enact such laws and regulations as are necessary for the protection of the public’s right in game. That general principle of law is stated in 38 C.J.S. Game §§ 7, 8, pp. 5-8 (1943), as follows:
“§ 7. Power to Protect and Regulate
“By reason of the state’s control over game within its limits, it is within the police power of the state legislature, subject to constitutional restrictions, to enact such general or special laws as may be reasonably necessary for the protection of the public’s rights in such game, even to the extent of restricting the use or right of property in the game after it is taken or killed. Such power may be at least partially delegated, by the constitution or by statute, to local governmental bodies, unless there is a constitutional provision to the contrary, and, where such power has been delegated, the regulation passed by the local body or board must be a reasonable one....”
“§ 8. Constitutional and Statutory Provisions
“Statutes for the protection of game and regulating the right of taking it must, of course, come within the limitations imposed by the state and federal constitutions, and are generally upheld on the ground of the police power of the state, even where they provide for different regulations for different parts of the state....”
We have located at least three Alabama cases in which the question of the constitutionality of game and fish laws was presented. The results reached in those cases may have prompted your inquiry in this instance, and this is the primary reason we have elected to answer your request.
In Sanders v. State, 53 Ala.App. 534, 302 So.2d 117 (1974), the defendants were convicted of using nets for commercial fishing in impounded waters stocked with saltwater striped bass, in violation of Regulation A-719, which was promulgated by the director of the State Department of Conservation pursuant to authority granted the director by the Legislature. The Court of Criminal Appeals, after noting that Regulation A-719 was the basis of a civil action, No. 3966-N, in the United States District Court for the Middle District of Alabama, Northern Division, in 1973 (styled Troy Williams, et al. Plaintiffs v. Claude D. Kelley, etc., et al. Defendants) for alleged deprivation of the plaintiffs’ civil rights, stated:
“Title 8, Section 59, Code of Alabama 1940 [§ 9-11-81, Ala.Code 1975] is a positive declaration that, until reduced to possession, title to all game and non-game fish is vested in the State. The right of any individual, partnership or corporation to reduce fish from their natural free state to one of private ownership is a privilege, as opposed to a vested right, granted by the State and subject to conditions, regulations and limitations placed on that privilege by the Legislature. The title to, and property in, the fish within the waters of the State are vested in the State of Alabama and held in trust for the people of the State. The State owns the fish, not in a private or proprietary capacity, but in its sovereign capacity and as a trustee for the people of the State. People v. Monterey Fish Products Co., 195 Cal. 548, 234 P. 398.
“One of the most important functions of the Department of Conservation and Natural Resources (Title 8, Section 2, Code of Alabama 1940) is to * * protect, conserve, and increase the wild life of the state and to administer all laws relating to wild life and the protection, conservation and increase thereof. * * * ’
“Title 8, Section 17 of the Code empowers the Commissioner to regulate ‘ * * * the manner, means, and devices for catching, or taking game fishes, ... and the maimer, means, and devices for catching or taking all other species of fish not designated as game fish; * * *.’
“Title 8, Section 21, of the Code authorizes the Commissioner to make and promulgate all such reasonable rules and regulations as ‘he may deem for the best interest of the conservation, protection and *1381 propagation’ of the wildlife of the state so long as they do not conflict with the existing laws of the state and are not designed to ‘hamper industry or which will interfere with the operation of any industrial plant or plants or any industrial operation,’ and such rules and regulations ‘shall have the effect of law. * * * ’
“In dealing with the specific area of commercial fishing the Legislature has granted to licensed individuals the privilege or right to use various types of commercial fishing gear, including nets, for the purpose of conducting commercial fishing operations. Title 8, Section 81(13), Code of Alabama 1940. Nevertheless, the lawmakers wisely subjected this privilege to an important limitation by further providing in this section that:
“ ‘ * * * All such nets ... shall conform to the rules and regulations promulgated by the director of conservation covering same, who shall designate when, where and how same shall be used, * *
53 Ala.App. at 540-41, 302 So.2d at 123-24.
In a concluding paragraph in Sanders, the Court held: “Regulation A-719 is reasonably susceptible of interpretation as a general law. In express terms the Regulation is made applicable to ‘all impounded public waters of Alabama’ that have been stocked with saltwater striped bass,” 53 Ala.App. at 542, 302 So.2d at 125 (emphasis added). This is a correct interpretation of the law. We also believe that the holding in Sanders relating to the power of the Legislature to protect, conserve, and increase the wildlife of the state and to administer all laws relating to wildlife, correctly states the law. This holding is consistent with the Supreme Court of Florida’s holding in State ex rel. Oglesby v. Hand, Sheriff, 96 Fla. 799, 119 So. 376 (1928), a habeas corpus proceeding brought by one charged with violating a statute regulating game and fish. In that case, the Florida Supreme Court discussed whether the act there involved was “general” or “local,” and we quote from it extensively because it discussed the legislative power relating to the protection and conservation of fish and game, in the context of fish and game regulations very similar to § 9-11-88, which H.B. 362 proposes to amend:
“It is contended that the act is bad because, while it purports to be a general law, it contains provisions that are local in character and application; that it is discriminatory and unreasonable, destroying uniformity of application and attempts to delegate legislative powers to the three different agencies: The state game commissioner, the wild life conservation commission, and the department of game and fresh-water fish.
“The department of game and freshwater fish and the state game commissioner constitute one and the same agency, with all the functions, powers and emoluments in the latter. The wild life conservation commission is brought into existence by section 4 of the act. It consists of one person from each congressional district. They serve without compensation, and their qualifications are to ‘have intimate knowledge of wild life.’ The phrase presumably refers to fish and game habits and habitat. The powers of the commission seem to be advisory only. Section 1 of the act defines fresh water to be all lakes, rivers, canals, and creeks and other fresh waters up to the ‘mouths’ of such waters where they empty into salt water or where signs are placed by the state game commissioner marking the mouth of the river. Lake Okeechobee, the St. Johns river from its mouth as far south as Volu-sia Bar, including Doctors Lake and Lake George, Carrabelle and New rivers in Franklin county, the Suwannee river as far north as the forks forming the east and west passes, and the Wacasassa river as far north as the mouth of Cow creek are excepted from the lakes and rivers defined to be fresh waters.
“Section 25 makes it unlawful to take or attempt to take any fresh-water fish from the fresh waters of the state by means of any device except hook and line, rod and reel, bob, spinner, or troll, unless specifically permitted by the act. The section then proceeds to make special provision for the use of other means for catching certain kinds of fish in the Apalachicola and Chattahoochee rivers, for the catching of stur *1382 geon during certain months and shad in St. Mary’s river during the open season, and for the catching of shad, mullet, and suckers during the open season with nets, on permits to be issued by the state game commissioner. It also makes provision for the use of nets of certain lengths and mesh size, or such as the state game commissioner may prescribe, in Lake Kissimmee, Lake Jackson, Lake Marion, Lake Lizzie, Lake Alligator in Osceloa county, Lake Oeheesee in Jackson county, and Alapaha river in Hamilton county during the open season.
“Section 35 prescribes the open season for fresh-water fish, but the provisions of the act do not apply to the waters named as exceptions in the first section. Several sections of the act, dealing with the taking of fresh-water fish and the transportation and sale of them, exclude certain fresh waters of the state from its provisions. So that fishing in such waters during the open season, or at other times, is not regulated by the provisions of the act except in those instances where the state game commissioner may prescribe the size of the mesh and length of net to be used.
“It is argued that on account of these and like provisions discriminations are made against persons living in different sections of the state who desire to engage in fishing as a business and whose supply of fish is in the waters not excluded by section 1 and other sections; that petitioner is one of such persons discriminated against and is competent to raise the point.
“Assuming that the exclusion of certain fresh-water lakes and rivers from all others in the state to which the provisions of the act do apply is a classification of waters as to fishing rights, it operates as no discrimination against persons. And it is entirely within the range of legislative discretion that conditions exist in the location of the waters excluded and the waters themselves which make it advisable within legislative wisdom to exclude them from the provisions of the act. Such is the doctrine held in State ex rel. Clarkson v. Philips, 70 Fla. 340, 70 So. 367, Ann.Cas. 1918A, 138; Harper v. Galloway, 58 Fla. 255, 51 So. 226, 26 L.R.A. (N.S.) 794, 19 Ann.Cas. 235.”
State ex rel. Oglesby v. Hand, 96 Fla. at 806, 119 So. at 379.
We recognize that the Court of Criminal Appeals, in State v. Lash, 350 So.2d 748 (Ala.Crim.App.1977), in dicta,[2] said that a legislative act there under review (Act No. 336, Ala.Acts 1976, Regular Session, now codified as § 9-11-88(b), Ala.Code 1975) violated the Alabama Constitution of 1901, specifically, Article 4, § 104(14) and § 105, and we recognize that the Lash decision may have prompted your inquiry relating to the pending legislation.
Although we note that the Legislature, in exercising its powers to protect, conserve, and increase the wildlife of the state and to administer all laws relating to wildlife and the protection, conservation, and increase thereof, has elected to do so by designating certain impounded waters and not including all, we do not believe that the Legislature’s classification is prohibited by Sections 106, 105, and 104(14).
Respectfully submitted,
HUGH MADDOX
GORMAN HOUSTON
MARK KENNEDY
KENNETH F. INGRAM
RALPH D. COOK Justices

. It appears that § 9-11-88, as it currently appears as a part of Ala.Code 1975, was codified by incorporating the provisions of Act No. 1234, Ala.Acts 1976, p. 2081, which prohibited commercial fishing in waters impounded by Jordan Dam, Lay Dam, Mitchell Dam, and Martin Dam, and Act No. 336, Ala.Acts 1976, which is related to the Tennessee River and its tributaries located within the boundaries of the State of Alabama. Act No. 1234 is now codified as § 9-11-88(a). Act No. 336 is now codified as § 9—11—88(b). H.B. 362 purports to amend § 9-11-88, by making some minor changes in subsections (a) and (b), and by adding subsection (c), which would relate to the waters impounded by the William “Bill” Dannelly Reservoir Dam, with the proviso that the prohibition of the use of a similar type net would not include hoop nets or wooden boxes as defined by the Department of Conservation and Natural Resources. In view of these facts, it appears to us that the subject matter of § 9-11-88 that H.B. 362 would amend regulates commercial fishing in waters located in several areas of the State, and that H.B. 362 would add the waters impounded by the William “Bill” Dannelly Reservoir Dam, except for the proviso.
While it might not affect the validity of H.B. 362, we do call your attention to the fact that the Synopsis to H.B. 362 makes no reference to "Mitchell Dam” or to the "Tennessee River,” both of which are included in the provisions of § 9-11-88 that H.B. 362 proposes to amend.

. The appeal was dismissed.