PITTMAN, Judge.
 

 This appeal concerns the methodology used to calculate the per diem reimbursement allowance to nursing-home operators for services provided to patients who are eligible for benefits under the Medicaid program (established by Title XIX of the Social Security Act,
 
 see generally
 
 42 U.S.C. § 1396 et seq.). As wé noted in
 
 Hartford Healthcare, Inc. v. Williams,
 
 751 So.2d 16, 19 (Ala.Civ.App.1999), the Alabama Medicaid Agency (“the Agency”) has adopted a cost-reimbursement system that “implements an advance-payment plan” based upon “allowable costs for nursing homes [that] are organized into one of the following cost categories [or ‘centers’]: (1) operating costs; (2) direct patient-care costs; (3) indirect patient-care costs; and (4) property costs.”
 
 See
 
 Ala. Admin. Code (Medicaid), r. 560-X-22-.06(2). In this appeal, 13 operators of nursing homes (“the operators”)
 
 [1]
 
 have challenged the Agency’s current practice of determining property-cost-center reimbursements with reference to a particular minimum occupancy rate of 85%.
 

 In this case, the operators, after having submitted cost reports to the Agency for the period between July 2003 and June 2004, sought fair hearings to dispute the manner in which the Agency had calculated the property-cost-center reimbursement as to their facilities. The operators’ cases were consolidated for hearing at the administrative level before a single administrative law judge (“the ALJ”) employed by the attorney general. At the hearing before the ALJ, the operators and the Agency presented evidence and arguments as to the reimbursement methodology utilized by the Agency. The ALJ ultimately issued a 25-page recommendation that the Agency’s commissioner render an order to the effect that the Agency had “acted [properly] in using an assumed 85 percent occupancy rate in determining fair rental reimbursement”; the commissioner did so on July 14, 2006, after which the operators timely petitioned for judicial review in the Montgomery Circuit Court. After briefing and argument from the parties, the trial court entered a judgment upholding the commissioner’s order, from which the operators have timely appealed.
 

 ■ Our standard of review is the standard set forth in
 
 Roberts Health Care, Inc. v. State Health Planning & Development Agency,
 
 698 So.2d 106 (Ala.1997):
 

 “Because the trial court’s ruling on [the pertinent] issue was not dependent on
 
 *1029
 
 any findings of fact, the
 
 ore tewus
 
 standard of review is not applicable. Thus, our review involves a pure question of law, and our review is
 
 de novo.
 
 However, [an appellate court] will generally give deference to a state agency’s interpretation of one of the regulations it has promulgated unless we determine that the agency’s interpretation is
 
 plainly erroneous”
 

 698 So.2d at 109 (emphasis added and citations omitted).
 

 Chapter 22 of the Agency’s Administrative Code sets forth at length the Agency’s “policy regarding nursing facility reimbursement and establishes the accepted procedures whereby reimbursement is made to nursing facility providers.” Ala. Admin. Code (Medicaid), r. 560-X-22-.01. Reimbursement principles for nursing facilities are outlined in detail in that chapter; however, that chapter also sets forth the general rule that, “[i]f this regulation [i.e., Chapter 22]
 
 is silent on a given point,”
 
 the Agency will normally rely on principles of retrospective reimbursement applicable to the
 
 Medicare
 
 program
 
 (see generally
 
 42 U.S.C. § 1395 et seq.), and the Agency “may impose other reasonability tests” if those principles likewise provide no guidance. Ala. Admin. Code (Medicaid), r. 560-x-22-.02(3) (emphasis added).
 

 The pertinent portion of Chapter 22 in which the Agency sets forth its “reimbursement methodology” is Regulation 560-X-22-.06. Section (2) of that regulation provides that “allowable costs will be categorized into one of ... four (4) groups: operating costs, direct patient care cost, indirect patient care cost, and property cost.” Subsection (d) of that section addresses the “Property Cost Center” and states that “a fair rental return ... will be computed for each provider” of nursing-home services “[i]n lieu of depreciation expense, lease expense, and a return on equity” by utilizing a six-step process that includes:
 

 1. Establishing a “current asset value” for a facility;
 

 2. Multiplying that “current asset value” by 2.5% to determine the “rental value” of the facility;
 

 3. Computing a “rate of return” by first subtracting the amount of allowable outstanding facility and equipment acquisition debt from the “current asset value” and multiplying the difference first (a) by the percentage yield, as of June 30 of each year, on 30-year bonds issued by the United States Treasury, and then (b) by a 1.5% “risk premium,” after which the products are added together;
 

 4. Determining interest expense related to facility and equipment acquisition debt;
 

 5. Ascertaining taxes and property-insurance costs stemming from ownership of the facility;
 

 6. Totaling the rental value, rate of return, interest, taxes, and insurance costs and subtracting a “laundry adjustment” of 1.5% of that sum, after which the net sum is to be divided by the allowable “patient days” to obtain the per diem “fair rental payment” for the facility.
 

 The parties’ specific dispute concerns the divisor to be utilized in step 6. The pertinent regulation provides:
 

 “The rental value, rate of return, allowable interest, property taxes, and property insurance costs, less laundry adjustment from Fair Rental, will be totaled and
 
 that total will be divided by the facility’s reported patient days to determine the facility fair rental payment
 
 which will be used to compute the facility’s rate.”
 

 Ala. Admin. Code (Medicaid), r. 560-x-22.06(2)(d)6 (emphasis added). However,
 
 *1030
 
 it is undisputed that the Agency, in'actual practice, requires providers, such as the operators, to report the “rental value” and the “rate of return” in an “asset column” of a form “nursing facility property worksheet,” whereas items such as allowable interest, taxes, and property-insurance costs are to be reported in a separate “expense column.” Although the Agency directs providers to divide the sum of the “expense column” items (after subtraction of the “laundry adjustment”) by the actual patient days reported by the submitting party, the Agency directs the submitting party to divide the adjusted sum of the “asset column” by
 
 85% of the total possible patient days
 
 (if that figure is greater than the reported actual patient days) before adding the so-called “asset side” and “expense side” quotients together.
 

 In its appellate brief, the Agency points out that to use actual patient days as the divisor on the “asset side,” as the operators contend should be done, “skews the [fair-rental-payment] rate upward as occupancy goes down for facilities reporting low occupancy levels,” and the Agency contends that to use actual patient days “is not fair to those facilities which are operating efficiently at occupancy levels at or above the benchmark.” However, the problem with the Agency’s argument is that the Agency itself has adopted a regulation that envisions the use of “reported patient days” as the divisor not only as to components of the “fair rental payment” that are derived from expense items but also as to those components that are derived from asset items. Subsection (2)(d)6 of Regulation 560-X-22-.06 directs that the rental value, rate of return, interest, taxes, and insurance costs be “totaled” and that, after having accounted for the “laundry adjustment,”
 
 “that total
 
 ... be divided by the facility’s reported patient days” (emphasis added). The regulations in Chapter 22 of the Medicaid Administrative Code, having been duly promulgated by the Agency, “ ‘are regarded as having the force of law,’ ” and the Agency and its officials “ ‘must
 
 vigorously comply
 
 with th[e] requirements’” set forth in those regulations.
 
 Ex parte Wilbanks Health Care Servs., Inc.,
 
 986 So.2d 422, 425 (Ala.2007) (quoting
 
 Hand v. State Dept. of Human Res.,
 
 548 So.2d 171, 173 (Ala.Civ.App.), aff
 
 'd,
 
 548 So.2d 176 (Ala.1988)) (emphasis added in Wilbanks).
 

 The Agency contends that “[n]owhere in Chapter 22 ... is the issue of occupancy addressed,” and it asserts that that purported silence empowers the Agency, under Regulation 560-x-22-.02(3), “to utilize [a] reasonability test” such as its differential treatment of the “asset side” and the “expense side” components of the “fair rental payment.” Insofar as whether a facility is to be held to a minimum occupancy standard, we agree with the Agency that no such standard appears in the regulations. However, as we have noted, subsection (2)(d)6 of Regulation 560-X-22-.06 specifically outlines in detail how the “fair rental payment” is to be determined; the plain language of that regulation envisions
 
 only
 
 the use of reported patient days in that determination rather than the imputation of a higher occupancy rate to certain providers based upon a claimed general interest of “reasonableness” or “efficiency.”
 

 Under our law, the rules and regulations of an administrative agency are subject to the same principles of construction as apply to the construction of statutes.
 
 See Sanders v. State,
 
 53 Ala.App. 534, 542, 302 So.2d 117, 125 (Crim.App.1974);
 
 see also Alabama Medicaid Agency v. Beverly Enters.,
 
 521 So.2d 1329, 1332 (Ala.Civ.App.1987). Among those principles is the premise that special provisions that relate to specific subjects (such as the
 
 *1031
 
 determination of “fair rental payment” under Regulation 560-x-22-.06(d)6) will control over general provisions relating to general subjects (such as Regulation 560-x-22-02, which addresses reimbursement determinations generally).
 
 See Ex parte E.J.M.,
 
 829 So.2d 105, 108 (Ala.2001). For us to affirm the Agency’s use of general “reasonableness” principles in an area governed by another, more specific regulation would be to turn that principle of construction on its head, and we may not properly do so.
 

 In responding to the operators’ suggestion that the Agency’s current reimbursement practice is contrary to its regulations and that an amendment to its regulations would be necessary to pei-mit it to utilize an imputed occupancy standard in determining fair rental payment, the Agency contends that it has been prohibited by statute from adopting any regulations that would alter its reimbursement methodology. However, rather than supporting the Agency’s position that the trial court’s judgment affirming its order is correct, the Agency’s argument actually tends to support the operators’ position. In 1997, the legislature amended Ala.Code 1975, § 40-26B-26(b), so as to provide that, with certain specific exceptions not pertinent here, nursing facilities participating in the state’s Medicaid program “shall be reimbursed
 
 according to the reimbursement methodology contained in Chapter 560-X-22 of the Alabama Medicaid Agency Administrative Code
 
 ... on January 31, 1998” (emphasis added). Although Chapter 22, as recently as early 1988, contained provisions under which nursing providers’ return on equity was to be calculated by dividing by reported patient days
 
 or
 
 90% of the possible annual patient days, Chapter 22 was amended in 1988 so as to “remove the low occupancy adjustment” from the Agency’s “rate setting methodology” because “it [was] no longer necessary.” 6
 
 Alabama Administrative Monthly
 
 93 (December 31, 1987). No similar provisions were added to Chapter 22 between 1988 and January 31, 1998; thus, we may interpret § 40-26B-26(b) as having indicated a legislative intent that no “low occupancy adjustments” be utilized by the Agency,
 
 including
 
 the adjustment at issue in this case.
 

 For the foregoing reasons, the judgment of the trial court affirming the Agency’s order is reversed, and the cause is remanded for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P.J., and BRYAN, ' THOMAS, and MOORE, JJ., concur.
 

 [1]
 

 . The operators are: Ball Healthcare-Jefferson, Inc.; Ball Healthcare-North, Inc.; Ball Healthcare-Roanoke, Inc.; Ball Healthcare-Eastview, Inc.; Chapman Healthcare Center, Inc.; Dadeville Healthcare Center, Inc.; Brookshire Healthcare Center, Inc.; Windor House; Goodwater Healthcare Center, LLC; Hatley Health Care, Inc.; Jefferson Rehabilitation & Health Center; Terrace Oaks Care
 
 &
 
 Rehabilitation Center, and Washington County Hospital & Nursing Home.